**Jessie L. INSKEEP, Plaintiff,**

v.

**Paul Howard DRAPER, aka Mike Draper, Defendant.**

**In the Matter of Paul Howard DRAPER aka Mike Draper, Debtor.**

Bankruptcy No. 3–81–02892.
Adv. No. 3–81–0758.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 8, 1982.

John R. Butz, Springfield, Ohio, for debtor/defendant.

James R. Warren, Springfield, Ohio, for plaintiff.

Carl E. Juergens, Springfield, Ohio, Trustee.

DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter has been submitted on the pleadings and evidence adduced, for a determination of facts and decision, both parties citing as applicable the *ratio decidendi* of prior decisions by this Court in *Tope v. Tope (In the matter of Tope),* 7 B.R. 422 (Bkrtcy.Ohio 1980); *In the matter of Sturgell,* (Bkrtcy.Ohio 1980) 7 B.R. 59; and *In the matter of Elmer Penwell, Jr.* (1982) Case No. B–3–80–03929 (at Dayton) unreported.

On 10 December 1976 in contemplation of marriage Plaintiff, Jessie L. Inskeep, and Defendant, Paul H. Draper, executed an antenuptial settlement, with specific refer-

ence to the real property "located at 5253 East County Line Road, Springfield, Ohio" owned by Inskeep, together with household furnishings and a life insurance contract; to "farm chattels," "automobile and trucks," and life insurance contracts owned by Draper. The agreement provided that the real estate "shall pass under her will to her nephew, Richard Stevens, or in the event of a sale of said property, the proceeds therefrom shall be placed in a savings account and made payable on death to the said Richard Stevens, reserving to Jessie L. Inskeep the right to use any or all of said proceeds during her lifetime...." It further provided, in pertinent part and with implementing clauses, as follows: "... Balance of said life insurance on the life of Paul H. Draper shall pass to the named beneficiaries as set forth in his will ... Household goods and furnishings including any automobiles or interest therein shall pass under the respective wills of each party."

The marriage ensued and no children were born to the parties and neither had minor children or dependents living with them during the marriage.

Inskeep was aware of Draper's serious indebtedness from his farming operations at the time of the marriage, which was one reason for an antenuptial contract. About $5,000.00 in cash which she had on marriage was contributed to pay farm debts, which was not sufficient. $22,500.00 additional funds were raised, secured by a mortgage on Inskeep's real estate. They planned to pay off this mortgage in three years, but, in the meantime the dairy farming business of Draper suffered a devastating loss, due in part to a severe winter and loss of cattle in a blizzard.

The dissolution of the marriage was requested by Draper.

On 5 March 1981 a dissolution of marriage decree was entered in the Common Pleas Court of Clark County, Ohio, in the presence of both parties, and a separation agreement by the parties approved and incorporated in the Decree.

In pertinent part, the separation agreement "awarded the real estate located at 5253 East County Line Road" to Inskeep, stipulating "Husband will assume and pay the mortgage indebtedness thereon owing to Merchants and Mechanics Federal Savings & Loan Association." Inskeep was awarded the "household goods" and a 1976 Chevrolet automobile, "... and husband will continue to be responsible for the loan thereon to Champaign National Bank in Urbana, Ohio." Draper was "awarded" trucks, all of his farm equipment, livestock, etc., and "wife is divested of any interest she may have in any of husband's farming operations."

Clause 5 reads, as follows: "Until such time as wife starts to receive the monthly survivor's annuity check provided by her late husband, Ivan Inskeep, husband will aid and assist wife in reasonable household expenses not to exceed $300.00 per month. At the time wife begins to receive the Annuity Checks this responsibility will cease."

Clause 7 reads as follows: "Subject to the foregoing, each party will remain responsible for his or her own personal debts and obligations."

Plaintiff by reason of age and other circumstances is able to obtain only marginal employment income. She presently earns about $563.00 per month, plus $378.00 on the restored annuity. Defendant's income is presently also marginal after expenses from operating a small dairy farm. He testified he earns about $250.00 per week, and from this pays $85.00 per month for rent and transportation.

The complaint filed by Plaintiff seeks a determination that the mortgage debt on the real estate in the approximate amount of $22,000.00 and possession of the 1976 Chevrolet free of a security interest should be rendered nondischargeable as debts for alimony, maintenance and support. Defendant answers that these obligations are in the nature of a "division of property" and, therefore, dischargeable.

## DECISION

The prior decisions of this Court as cited by both parties are based upon facts which

can be distinguished to a degree. Those cases involved a property settlement or division of property acquired during the marital relationship.

Here, although the real estate was ostensibly "awarded" to Plaintiff by the state court decree of dissolution of the marriage, it is apparent from the evidence that it was Plaintiff's property before the marriage, and by the antenuptial agreement of the parties never ceased to be her property. As a result of the marriage and subsequent loan to pay preexisting debts of Defendant, her title is now encumbered by an overwhelming mortgage lien.

No issue of fraud or misrepresentation has been submitted, however, and the facts must be rationalized on the issue as presented: namely, was the effect of the state court decree to award "alimony support, or maintenance" or was a "settlement of property" effected?

As pointed out in the prior decisions of this Court cited by the parties, the legislative history of 11 U.S.C. § 523(a)(5) in overruling cases such as *In re Waller*, 494 F.2d 447 (6th Cir.1974), clearly demonstrates that what constitutes alimony, maintenance, or support must be determined under bankruptcy law, not state law.

This Court has also in numerous decisions referred to established bankruptcy court case law precedents establishing that debts arising from loans traceable to property divisions are dischargeable. For precode applications of this general rule, see *In re Wray*, Case No. B–3–77–296 (at Dayton, 1978 unreported) and *Horner v. Horner (In re Horner*, at Dayton, 1978 unreported). The case precedents often categorize this generality rule as "property settlement agreements." See *Cox v. Cox*, 543 F.2d 1277 (CA 10, 1976); *Goggans v. Osborn*, 237 F.2d 186 (CA 9, 1956).

Juxtaposed to the "property division" rationale is the analysis of the facts of a case leaning toward the conclusion that one spouse necessarily will require assistance from the other in maintaining the barest necessaries of life, such as food and shelter. See *Matter of Tope*, 7 B.R. 422, at 425 (Bkrtcy.Ohio 1980).

■ Looking to the facts *instanter* it is noted (even though not of serious import) that the state court decree and separation agreement incorporated therein at no point employ the words "alimony," "support," or "maintenance."

The crucial fact, therefore, is the history of the marriage relationship and the financial resources available for placing the parties in a tenable position for basic living conditions. As previously observed, there was in reality no "division of property" as to the real estate since it had come to the union as the property of Plaintiff. Ignoring the wording which erroneously "awarded the real estate" to Plaintiff, the actual effect of the provision that, "Husband will assume and pay the mortgage indebtedness thereon owing to Merchants and Mechanics Federal Savings & Loan Association" reveals the intention of the parties on 29 January 1981, the date of the separation agreement. This is the crucial time period, and the parties then knew and recognized that there was no possibility of Plaintiff supporting herself with the overwhelming mortgage indebtedness on her residence, placed there to alleviate preexisting farm debts of Defendant. Furthermore, this had been her home long before the ill-fated marriage from which Defendant extricated himself.

■ Upon the same rationale, different conclusions pertain to the contemplated transfer of the 1976 Chevrolet automobile from Defendant to Plaintiff. There is no evidence that the vehicle is necessary for Plaintiff's use in her support. The Defendant was owner of the vehicle before marriage. Hence, Plaintiff did not then have need of this vehicle for her support and maintenance. The hold harmless agreement as to the security interest thereon likewise was not intended to discharge a duty of support, but was a property settlement condition. See *In re Woods*, 561 F.2d 27 (CA 7, 1977). Therefore, the state court decree as to transfer of the automobile remains a matter for enforcement by that

court as a division of property; and, the hold harmless clause debt on the vehicle is discharged in bankruptcy.