CORNELIA G. KENNEDY, Circuit Judge.
 

 Clarence Calhoun appeals the Bankruptcy Court’s summary judgment that his assumption of five loan obligations totaling $27,564.14 pursuant to a separation agreement between Calhoun and his former wife were “in the nature of” support or alimony and therefore nondischargeable debts under 11 U.S.C. § 523(a)(5).
 
 [1]
 
 We reverse and remand for further proceedings consistent with this opinion.
 

 Appellant filed for voluntary bankruptcy under Chapter 7,11 U.S.C. § 701
 
 et seq.,
 
 on July 1, 1980. His former wife, appellee Jo Ann Long, was listed as the holder of unspecified unsecured claims. Appellee Long brought a complaint before the Bankruptcy Court to determine whether obligations of $21,611.32
 
 [2]
 
 assumed by the appellant in the parties’ separation agreement constituted alimony excepted from discharge under 11 U.S.C. § 523(a)(5).
 

 Calhoun and Long were married, both for the second time, on October 2, 1976. No children resulted from their marriage. Each had children from their first marriages. On November 14, 1979 the couple entered into a separation agreement in which Calhoun, unrepresented by counsel,
 
 [3]
 
 agreed to assume five debts jointly incurred during the marriage and to hold Long harmless for their payment. The agreement characterizes this assumption as alimony and support although it is found in the section of the document labeled Division of Property. Another section labeled Alimony states that there shall be no alimony other than that provided in the debts and obligation section. An Ohio Common Pleas Court subsequently incorporated this agreement into a divorce decree dissolving the marriage.
 

 The five obligations assumed by Calhoun include:
 

 (1) A note for $8,670 to the First National Bank of Massillon which financed a swimming pool at the home owned by the appellee Long;
 

 (2) A note for $11,000 to Floyd Schalmo, the proceeds from which were used to consolidate the couple’s debts including $5,000 for Calhoun’s business, Bimbo’s Place, and $6,000 for utilities, car payment and prior debts;
 

 (3) Visa card charges of $1,076.38 incurred to pay for Calhoun’s expenses at a truck driving school;
 

 (4) Mastercharge card charges of $824.22 for Calhoun’s expenses while “on the road”;
 

 (5) A note of $5,998.40 for the purchase of a 1977 Dodge Tradesman Van titled to Calhoun.
 

 At the time of their separation Calhoun had sold his business and had been laid off from his job as a meat cutter. His earnings for the prior three years were approximately $10,000 to $15,000 in 1977, $7,500 in 1978, and a loss in 1979. His current income is approximately $950.00 per month from which he is required to pay approximately $300.00 per month for support of two children from his previous marriage and $707.00 per month on the debts he assumed in the parties’ separation agreement. Long
 
 *1106
 
 has an income of approximately $500.00 per month (including $260.00 in ADC payments and $160.00 in child support from her first husband). She owns her own home (which she received on dissolution of her first marriage) on which she pays $95.00 per month in mortgage payments.
 

 This case presents the issue of when a debtor’s assumption of joint debts and the undertaking to hold a former spouse harmless as part of a marriage separation agreement constitutes support or alimony payments to the former spouse resulting in non-dischargeable debts under 11 U.S.C. § 523(a)(5).
 
 [4]
 

 Section 523(a)(5) represents Congress’ resolution of the conflict between the discharge of obligations allowed by the bankruptcy laws and the need to ensure necessary financial support for the divorced spouse and children of the debtor. Accordingly, § 523 excepts from discharge payments:
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
 

 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support(.)
 

 The initial question is whether those obligations not payable
 
 directly
 
 to the former spouse are nondischargeable under § 523(a)(5). The Senate and House Reports contain conflicting language. At one point they seem to indicate payments must be made directly.
 

 Paragraph (5) excerpts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b)) by section 327 of the bill, will apply to make nondis-chargeable only alimony, maintenance, or support owed
 
 directly
 
 to a spouse or dependent.
 
 See Hearings,
 
 pt. 2, at 942. (emphasis supplied)
 

 H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 364 (1977)
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News, 5787, 6320; S.Rep. No. 95-989, 95th Cong., 2d Sess. 79,
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5865. The remaining portion of the report, however, refutes any direct payment requirement in the case of an agreement to hold a spouse harmless on joint debts.
 

 This provision will, however, make non-dischargeable any debts resulting from an agreement by the debtor to hold the debtor’s spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.
 
 See Hearings,
 
 pt. 3, at 1287-1290.
 

 Id.
 

 The Second Circuit rejected a requirement of direct payment in
 
 In re Spong,
 
 661 F.2d 6 (2nd Cir.1981). The court relied, in part, on a joint explanatory statement by the principal sponsors of the Act:
 

 If the debtor has assumed an obligation of the debtor’s spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargea-ble to the extent that payment of the debt by the debtor is not actually in the
 
 *1107
 
 nature of alimony, maintenance, or support of debtor’s spouse, former spouse, or child.
 
 [5]
 

 24 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); Id. at S17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).
 
 See
 
 661 F.2d at 10.
 

 Bankruptcy court decisions have uniformly found hold harmless clauses to create nondischargeable obligations.
 
 E.g., In re Petoske,
 
 16 B.R. 412 (Bkrtcy.E.D.N.Y.1982);
 
 Matter of Gentile,
 
 16 B.R. 381 (Bkrtcy.S.D.Ohio 1982);
 
 In re French,
 
 9 B.R. 464, 466-67 (Bkrtcy.S.D.Cal.1981). We agree with these courts and hold that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable.
 

 In accordance with the express language of § 523(a)(5) the bankruptcy courts have uniformly required that joint obligations assumed by the debtor as a part of a separation or divorce settlement must be “actually in the nature of” alimony or support in order to be excepted from discharge.
 
 E.g., In re French,
 
 9 B.R. 464, 466-67 (Bkrtcy.S.D.Cal.1981);
 
 In re Eisenberg,
 
 18 B.R. 1001, 1003-004 (Bkrtcy.E.D.N.Y.1982);
 
 In re Dirks,
 
 15 B.R. 775, 779 (Bkrtcy.N.M.1981);
 
 In re French,
 
 19 B.R. 255, 256 (Bkrtcy.M.D.Fla.1982).
 
 See also Melichar v. Ost,
 
 661 F.2d 300, 303 (4th Cir.1981). The issue of when an assumption of joint debts is “in the nature of alimony, maintenance, or support” as opposed to a division of communal property is to be determined by federal bankruptcy law.
 
 E.g., In re Petoske,
 
 16 B.R. 412 (Bkrtcy.E.D.N.Y.1982);
 
 In re Daiker,
 
 5 B.R. 348, 351-52 (Bkrtcy. Minn.1980).
 
 See In re Spong,
 
 661 F.2d 6, 8-9 (2nd Cir.1981).
 
 See generally
 
 3 Collier on Bankruptcy § 523.15(1) (15th Ed.1981). The legislative history of the provision is unequivocal on this point. Both the House and Senate Reports declare:
 

 What constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law.
 
 Thus, cases such as
 
 In re Waller,
 
 494 F.2d 447 (6th Cir.1974), are overruled, and the result in cases such as
 
 Fife v. Fife,
 
 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. The Proviso, however, makes non-dis-chargeable any debts resulting from an agreement by the debtor to hold the debt- or’s spouse harmless, on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse,
 
 as determined under bankruptcy law considerations as to whether a particular agreement to pay money to a spouse is actually alimony or a property settlement,
 
 (emphasis supplied)
 

 S.Rep. No. 95-989, 95th Cong., 2d Sess., 79,
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad. News 5787, 5865.
 
 See also
 
 H.R. No. 95-595, 95th Cong., 1st Sess., 364 (1977),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5963, 6320.
 

 Yet, while it is clear that Congress intended that federal not state law should control the determination of when an assumption of joint debts is “in the nature of” alimony or support, it does not necessarily follow that state law must be ignored completely. It is unlikely that Congress could have intended such a result. The underlying obligation to provide support in the first place is necessarily determined by state law. The federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist. Moreover, there is “no federal law of domestic relations.”
 
 DeSlyva v. Ballentine,
 
 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). Divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts.
 
 Boddie v. Connecticut,
 
 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971) (Black, J., dissenting). We agree, therefore, with the Second Circuit’s reasoning in
 
 In re Spong,
 
 661 F.2d at 9, that Congress could not have intended the bankruptcy courts to ignore well developed state law principles of domestic relations in determining whether a particular loan assumption is “in the
 
 *1108
 
 nature of” alimony or support for purposes of the bankruptcy act.
 

 Neither the case law nor legislative history, however, resolve the extent to which resort to state law would be appropriate. The rationale that has prevailed in varying degrees before most bankruptcy courts as well as the Second Circuit in
 
 In re Spong
 
 is that while state law is not binding, it nonetheless may provide a useful source of “guidance.”
 
 E.g., Id.; In re King;
 
 15 B.R. 127, 129 (Bkrtcy.Kans.1981);
 
 In re Allen,
 
 4 B.R. 617 (Bkrtcy.E.D.Tenn.1980);
 
 In re Pelikant,
 
 5 B.R. 404 (Bkrtcy.N.D.Ill.1980);
 
 In re Dirks,
 
 15 B.R. 775, 779 (Bkrtcy.N.M.1981). Yet, there is little agreement as to what the vague term “guidance” actually means. Some bankruptcy courts have utilized state law to determine whether there is an underlying “obligation” to pay alimony or support in the first instance.
 
 See In re French,
 
 9 B.R. 464, 468 (Bkrtcy.S.D.Cal. 1981);
 
 In re Miller,
 
 8 B.R. 174, 3 Collier Bankr. Cas.2d 595, 598 (Bkrtcy.N.D.Ohio 1981);
 
 In re Warner,
 
 5 B.R. 434, 440-41 (Bkrtcy.Utah 1980);
 
 In re Pelikant,
 
 5 B.R. 404 (Bkrtcy.N.D.I11.1980);
 
 In re Lowell,
 
 3 B.R. 401, 404 (Bkrtcy.N.D.Ga.1980). Similarly, some courts have considered the amount of support a state court would have reasonably granted as a relevant factor in determining whether the loan assumption was actually in the nature of support.
 
 See, e.g., In re Jeffrey Lowell Williams,
 
 3 B.R. 401, 404 (Bkrtcy.N.D.Ga.1980);
 
 In re French,
 
 9 B.R. 464, 468 (Bkrtcy.S.D.Cal.1981).
 
 [6]
 
 A few bankruptcy courts have also considered whether some provision is made for termination of the debtor’s sole responsibility for the assumed obligation upon remarriage of the former spouse or age of majority in the children.
 
 See, e.g., Matter of Martin,
 
 19 B.R. 367 (Bkrtcy.M.D.Fla.1982);
 
 In re Dirks,
 
 15 B.R. 775 (Bkrtcy.N.M.1981);
 
 Matter of Taft,
 
 10 B.R. 101, 4 Collier Bankr.Cas.2d 65 (Bkrtcy.Conn.1981).
 

 Other bankruptcy courts have simply recited those factors most often considered relevant by state courts generally in determining whether to grant support without reference to any particular state’s law.
 
 See, e.g., In re Petoske,
 
 16 B.R. 412, 414 (Bkrtcy.E.D.N.Y.1982);
 
 In re Eisenberg,
 
 18 B.R. 1001, 1003-004 (Bkrtcy.E.D.N.Y.1982);
 
 Matter of Gentile,
 
 16 B.R. 381, 383 (Bkrtcy.S.D.Ohio 1982). These courts have looked for factors from which they might discern either the underlying purpose of the state court decree or the actual intentions of parties in providing loan assumption by the debtor; that is, was the assumption meant to be in lieu of support payments or rather just a means of dividing property upon divorce?
 
 See, e.g., Hixson v. Hixson,
 
 23 B.R. 492, 495 (Bkrtcy.S.D.Ohio 1982);
 
 Matter of Jensen,
 
 17 B.R. 537, 540 (Bkrtcy.W.D.Mo.1982);
 
 In re Petoske,
 
 16 B.R. 412 (Bkrtcy.E.D.N.Y.1982).
 
 [7]
 

 Fairly divergent dispositions have resulted from utilization of the above factors. The initial difficulty is that every assumption of a joint loan obligation in a divorce settlement at least indirectly contributes to support. The former spouse is relieved of payments on that debt and thus has funds for other purposes including necessary support. Support in this broad sense results even if the assumption of joint marital debts is actually a division of property. It is clear from the statute and legislative history that Congress could not have intended that all assumptions of joint debts would be nondischargeable. Such assump
 
 *1109
 
 tions of debt are discharged “to the extent that payment ... is not actually in the nature of alimony, maintenance or support .... ” 124 Cong.Rec. 4, 11,096 (daily ed. Sept. 28, 1978) (Rep. Edwards) 517, 412 (daily ed. Oct. 6,1978) (Sen. DeConcini). To interpret § 523 in this broad sense envisages results at odds with the “fresh start” concept which underlies the Bankruptcy Act.
 
 See In re Dirks,
 
 15 B.R. 775, 779 (Bkrtcy.D.N.M.1981);
 
 In re King,
 
 15 B.R. 127, 130 (Bkrtcy.D.Kan.1981). The federal bankruptcy common law of domestic relations which Congress has apparently charged the bankruptcy courts to fashion must give considerable weight to this important factor. This, and Congress’ mandate that federal bankruptcy law considerations must be determinative in discharge-ability issues, convinces us that a more searching inquiry is required than merely applying traditional factors borrowed from state law.
 

 We believe that the initial inquiry must be to ascertain whether .the state court or the parties to the divorce
 
 intended
 
 to create an obligation to provide support through the assumption of the joint debts. If they did not, the inquiry ends there. There is no basis for the bankruptcy court to create a non-dischargeable obligation for the debtor that the state court granting the divorce decree or the parties to that proceeding did not create. In making this determination the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support.
 
 [8]
 

 This finding of intent does not, however, control the ultimate issue of whether the assumption of joint debts was actually in the nature of support for purposes of federal bankruptcy. If the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support it must next inquire whether such assumption has the
 
 effect
 
 of providing the support
 
 necessary
 
 to ensure that the daily needs of the former spouse and any children of the marriage are satisfied. The distribution or existence of other property, for example, may make the continuing assumption of joint debts unnecessary for support, as might drastic changes in the former spouse’s capabilities for self-support.
 
 [9]
 
 Substance must prevail over form.
 
 E.g., In Matter of Gentile,
 
 16 B.R. 381, 383 (Bkrtcy.S.D.Ohio 1982);
 
 In re Miller,
 
 8 B.R. 174, 3 Collier Bankr.Cas.2d 595 (Bkrtcy.N.D.Ohio 1981);
 
 Matter of Taft,
 
 10 B.R. 101, 4 Collier Bankr.Cas.2d 65 (Bkrtcy.N.D.Ga.1980);
 
 In re Warner,
 
 5 B.R. 434, 440-41 (Bkrtcy.Utah 1980);
 
 See also In re Spong,
 
 661 F.2d 6, 9 (2nd Cir.1981); 3 Collier on Bankruptcy § 523.15(5) (15th Ed.1981). The bankruptcy court should also look to the practical effect of the discharge of each loan upon the dependent spouse’s ability to sustain daily needs. Discharge of a joint debt on the bankrupt’s automobile, for example, is unlikely to disrupt the dependent spouse’s ability to meet daily needs when the automobile itself is available to the creditor in satisfaction of the debt. If without the loan assumption the spouse could not maintain the daily necessities, such as food, housing and transportation, the effect of loan assumption may be found “in the nature of” support for purposes of the Bankruptcy Act.
 
 See, e.g., Inskeep v. Draper,
 
 25 B.R. 518, 520 (Bkrtcy.S.D.Ohio 1982);
 
 Hixson v. Hixson,
 
 23 B.R. 492, 496 (Bkrtcy.S.D.Ohio 1982);
 
 Matter of Painter,
 
 21 B.R. 846, 848 (Bkrtcy.M.D.Ga.1982). If the loan assumption is not found necessary to provide such support, the inquiry ends and the debt- or’s obligation to hold the former spouse harmless must be discharged.
 
 [10]
 

 
 *1110
 
 Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. Such an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law. For this reason, the loan assumption should be treated, to the extent possible, the same as ordinary direct child support or alimony payments. A universal consideration of state courts in setting such direct support payments is the supporting spouse’s general ability to pay the support ordered. Under the mandate of Congress that the bankruptcy court fashion a common law of bankruptcy and the principle that one cannot contract away bankruptcy rights, the bankruptcy courts in the case of an obligation to hold the former spouse harmless on joint debts must, therefore, examine the ability to pay. If, at the time the debts were assumed,
 
 [11]
 
 the assumption substantially exceeded a spouse’s present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should be not characterized as in the nature of support. We recognize the difficulty of making such a factual inquiry. However, the alternative would be to permit the debtor to contract away the right to discharge in bankruptcy and the opportunity for a fresh start. The inquiry will be limited to whether the amount agreed to is manifestly unreasonable in view of the earning power and financial status of the debtor spouse.
 

 If the bankruptcy court finds the loan assumption too excessive to be fairly considered “in the nature of” support it must then set a reasonable limit on the nondis-chargeability of that obligation for purposes of bankruptcy. Use of factors similar to those a state court would employ to formulate a reasonable limit on support may be used to serve that limiting function in the context of a dischargeability determination. In such cases the bankruptcy courts should consider such traditional state law factors as the relative earning powers of the parties, their financial status, prior work experiences or abilities, other means of support and other facts relevant to the
 
 substance of the result
 
 achieved by the loan assumption in order to determine how much of the debt assumed can be fairly considered “in the nature of” support for purposes of federal bankruptcy.
 
 [12]
 

 The bankruptcy court’s determination of whether a loan assumption constitutes a nondischargeable support obligation is a factual finding only reviewable in the court of appeals under the clearly erroneous standard of Fed.R.Civ.P. 52.
 
 [13]
 

 See Matter of Coil,
 
 680 F.2d 1170, 1172 (7th Cir.1982).
 
 *1111
 
 See
 
 also Melichar v. Ost,
 
 661 F.2d 300, 303 (4th Cir.1981);
 
 In re Nelson, II,
 
 20 B.R. 1008 (D.C.M.D.Tenn.1982) (The district court may overturn a factual finding by a bankruptcy court only if clearly erroneous. Bankr.R. 810). In this case, however, the Bankruptcy Court made two errors of law which require that the judgment be reversed and the case remanded for reconsideration without our review of the court’s factual findings.
 

 The Bankruptcy Court first erred by applying an incorrect legal standard. The Court held, that the clear language of the parties’ separation agreement controlled the issue of dischargeability “unless the compelling weight of the evidence suggests that enforcement of the agreement would work a manifest injustice.”
 
 [14]
 
 The language of the parties’ (or state courts’) characterization of the loan assumption does not control. Moreover, the Bankruptcy Court, in effect, shifted the burden of proof from the plaintiff spouse
 
 [15]
 
 to the debtor to show that the agreement does not mean what it says or works a manifest injustice. Placing this degree of reliance upon the language of the parties’ agreement and placing the burden of persuasion on the debtor are legal errors which may not be separated from the court’s factual findings in this case. The contents of those findings were inextricably dependent upon the focus of the court’s inquiry.
 

 The Bankruptcy Court also erred by not considering each loan obligation assumed individually. Many of the factors considered in determining dischargeability could vary depending upon the type of loan involved, its purposes and the circumstances of the parties.
 
 See, e.g., In re Nelson,
 
 20 B.R. 1008 (D.C.M.D.Tenn.1982);
 
 Inskeep v. Draper,
 
 25 B.R. 518 (Bkrtcy.S.D.Ohio 1982);
 
 Hixson v. Hixson,
 
 23 B.R. 492 (Bkrtcy.S.D.Ohio 1982). On remand, therefore, the Bankruptcy Court should consider each of the appellant’s five assumed debts in light of the standards enunciated in this opinion.
 

 Accordingly the judgment of the Bankruptcy Court is reversed and the case remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The summary judgment was based upon the parties’ stipulation of facts, the pleadings and arguments of counsel.
 

 [2]
 

 . The appellant Calhoun correctly notes that the Bankruptcy Court found $27,564.14 in non-dischargeable debts even though the appellee only challenged $21,611.32 of the appellant’s claimed dischargeable debts. On remand the Bankruptcy Judge should reconcile and explain this discrepancy.
 

 [3]
 

 .Mr. Calhoun, although unrepresented, makes no claim that he misunderstood the nature of his obligations under the parties’ separation agreement. The parties agree that the terms of the agreement were explained to Calhoun by Long’s counsel and Calhoun’s consent to its terms voluntarily given. The absence of counsel is only relevant in cases in which the debtor did not understand the nature of his obligation created by the parties’ consent agreement.
 
 But see Matter of Gentile,
 
 16 B.R. 381, 383 (Bkrtcy.S.D.Ohio 1982).
 

 [4]
 

 . There are two distinct obligations involved in an agreement to assume former joint marital debts — the underlying debt owed to the mutual creditor and the obligation owed directly to the former spouse to hold the spouse harmless on that underlying debt. It is only the discharge-ability of this latter obligation which is at issue in the present case.
 

 [5]
 

 . These remarks were offered jointly by sponsors from both houses of Congress in lieu of a conference report on the Act. As such they are of greater value in interpreting legislative intent than the statements of individual legislators ordinarily are.
 
 See National Woodwork Manufacturers Ass’n v. NLRB,
 
 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 (1967).
 

 [6]
 

 . The latter approach of evaluating the extent of any underlying state law duty to support is arguably in contradiction to Congress’ intent that state law not be controlling. The obvious temptation is to treat as conclusive any finding that a duty to support at a specific level would exist under state law. Succumbing to such a temptation would clearly circumvent the legislature’s intent that considerations particular to federal bankruptcy law shall be determinative of dischargeability issues.
 

 [7]
 

 . These factors include: the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties’ agreement or the court’s decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.
 

 [8]
 

 .
 
 See
 
 discussion on pp. 1107-1108.
 

 [9]
 

 . At issue in the present case is solely the dischargeability of a continuing obligation to hold the former spouse harmless on past marital debts. There has been no claim made that Calhoun is in arrears on past payments due under this obligation. The dischargeability of such unpaid past liabilities requires an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged.
 

 [10]
 

 .We recognize that such inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided. Actual interference, however, will probably be minimal. In a contested case the likelihood that the state court would have awarded
 
 *1110
 
 support where it was unnecessary is sufficiently remote that such interference by the bankruptcy court will seldom be necessary. When, as in the present controversy, the decree is not the result of a contested case but merely incorporates the parties’ agreement, the concern for comity is of less importance. To allow the parties’ characterization of a loan assumption in such cases to control pro forma would permit the debtor to agree to forego his rights under the bankruptcy laws.
 

 [11]
 

 . If the circumstances of the debtor have changed from the time the obligation to the former spouse to pay joint debts was created so as to make such support now inequitable the bankruptcy court may consider the debtor’s
 
 current
 
 general ability to pay insofar as it relates to the
 
 continuing
 
 obligation to assume the joint debts.
 

 [12]
 

 . We emphasize that the nature of this final inquiry as to whether the loan assumptions would constitute an excessive degree of support beyond that which any state court would reasonably allow given the parties’ relative circumstances, is a limited one. It is not intended that the Bankruptcy Court sit as a “super-divorce” court. Rather, the purpose of such inquiry is to ensure that the degree of support represented by the loan assumptions, particularly in uncontested cases, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding.
 

 [13]
 

 .The parties here claim to have taken a direct appeal by agreement to the Sixth Circuit pursuant to 28 U.S.C. § 1293(b). Section 1293(b) is not actually effective until April 1, 1984. However, this section refers to the note preceding 28 U.S.C. § 1471 as controlling appeals during the transitional period. That note, Pub.Law 95-598, Title IV, § 405, 92 Stat. 2686, authorizes the same form of appeal by stipulation described in § 1293(b).
 

 [14]
 

 . Apart from consideration of whether the assumption of joint debts is so excessive as to be unreasonable, the bankruptcy court may not find an assumption dischargeable merely on general equitable considerations. This limitation on the court’s inquiry is apparent when § 523(a)(5) is compared to § 523(a)(8) which governs the dischargeability of student loans. The latter discharge exception specifically provides that the Bankruptcy Court may find a student loan debt dischargeable if equitable considerations so warrant even though otherwise defined as a nondischargeable debt. The former has no such provision. Because of Congress’ silence, as well as the undesirable increased potential for second guessing state Court decrees, we believe that § 523(a)(5) is limited to consideration of whether the assumed debt is actually in the nature of support as defined in this opinion.
 
 See In re Nelson, II,
 
 20 B.R. 1008, 1011 n. 3 (D.C.M.D.Tenn.1982).
 

 [15]
 

 . It is the spouse’s burden to establish nondis-chargeability.
 
 See In re Daiker,
 
 5 B.R. 348, 351-52 (Bkrtcy.Minn.1980).