**In re L. Steven LEWIS a/k/a Leslie Steven Lewis, Debtor.**

**Patricia M. LEWIS, Individually and by her attorney Richard G. Collins and Richard G. Collins as attorney for Patricia M. Lewis, Plaintiffs,**

v.

**L. Steven LEWIS a/k/a Leslie Steven Lewis, Defendant.**

**Bankruptcy No. 82–12069 M.**
**Adv. No. 82–1617–M.**

United States Bankruptcy Court,
W.D. New York.

May 8, 1984.

Flynt, Hickey & Shapiro, Buffalo, N.Y. (W. Rogers Flynt, Buffalo, N.Y., of counsel), for plaintiffs.

Kallett & Ronci, Buffalo, N.Y. (R. Anthony Ronci, Buffalo, N.Y., of counsel), for defendant-debtor.

BERYL E. McGUIRE, Bankruptcy Judge.

The debtor, L. Steven Lewis, filed his Chapter 7 petition in this Court on July 15, 1982. Scheduled among his creditors were debts to his former wife and to her attorney, Richard Collins. On September 23, 1982, these creditors filed a complaint seeking a determination of the dischargeability of their respective debts. Following the debtor's filing of an answer, the parties ultimately agreed to submit the issues on a stipulated set of facts. The stipulation was filed on September 16, 1983, and it hereby is incorporated by reference.

## I

This Court has jurisdiction to resolve this adversary proceeding pursuant to Local Rule of the Federal District Court for the Western District of New York.

## II

The dispute arises from and relates to an auto loan from Marine Midland Bank for the purchase of a 1977 AMC Hornet automobile. The loan was signed by both the debtor, L. Steven Lewis, and his then wife, Patricia Lewis. Subsequently, under a separation agreement which was later merged into their divorce decree, Mr. Lewis was to get this car and, in return, was to pay the Marine loan and hold Ms. Lewis harmless on the debt.

In August of 1980, Mr. Lewis defaulted on the Marine loan, he and Ms. Lewis both were sued, and a judgment taken against each for $1,322.66.

In June of 1981, Ms. Lewis obtained an order from the New York Supreme Court holding the debtor in contempt for failing

to pay this debt. The order provided that the debtor could purge himself by payment. Mr. Lewis either could not or, in any event, did not pay. In January of 1982, Ms. Lewis obtained a second Supreme Court order in which, to avoid contempt, Mr. Lewis consented to the entry of judgment against him for this sum and, additionally, to an award of $500.00 to Mr. Collins, his former wife's attorney. The plaintiffs seek to have these obligations held nondischargeable.

Section 523, Title 11 United States Code, sets forth various types of debts which are nondischargeable. It should be noted that the issues before this Court turn upon the provisions of subsection 523(a)(5) and not subsection 523(a)(7) of this section.[1]

### III

Section 523(a)(5) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

In terms of the legislative history of this subsection, while the text of the House bill[2] and the Senate bill[3] varied, the objective of both versions, for all practical purposes, was identical, namely:

Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. § 656(b)) by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. *See Hearings*, pt. 2, at 942. What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir.1974); *Hearings*, pt. 3, at 1308–10, are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of ali-

---

1. The latter subsection governs fines and penalties. The first Supreme Court order finding Mr. Lewis in contempt, if not clearly superseded by the second Supreme Court order, was one which provided compensation for loss and, hence, is not within the terms of subsection 523(a)(7). *See, In re Marini*, 28 B.R. 262, 10 B.C.D. 434 (Bkrtcy.E.D.N.Y.1983).

2. § 523.
   (a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
   \* \* \* \* \* \*
   (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child;
   H.R. 8200, Report No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787.

3. § 523.
   (a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
   \* \* \* \* \* \*
   (6) any liability to a spouse or child for maintenance or support, or for alimony due or to become due, in connection with a separation agreement or divorce decree. A debt shall not be excepted from discharge, however, solely because the spouse is obligated in any manner to pay the debt, and except that if such maintenance, support or alimony award includes liability for debts accrued prior to the separation agreement or divorce decree then the court may determine that such debts may be discharged.
   S.2266, Report No. 95–989, 95th Cong., 2nd Sess. (1978).

mony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. *See Hearings,* pt. 3, at 1287–1290.[4]

The phrasing of the text of the House and Senate bills was compromised (in the context of the issue before this Court, the changes in phraseology were not material), and the resulting subsection was accompanied by a more abbreviated form of the original legislative comments, namely:

> Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child.[5]

■ It is this Court's view that the Congress, in the clearest possible terms, has required that for a debt to be nondischargeable under this subsection, it must be.a debt:

a) due to a spouse, former spouse or child of the debtor

b) for alimony to, maintenance for, or support of such spouse or child, and

c) arising in connection with a separation agreement, divorce decree, or property settlement agreement.

Congress reemphasized that purpose by declaring the debt discharged if it were in the hands of an assignee (other than the Social Security Administration) and by declaring that, if the debt to the spouse or former spouse arose from a promise to indemnify the spouse on joint debt, the underlying debt itself actually be in the nature of alimony, maintenance or support.

■ Thus, putting aside assignments under the Social Security Act, Congress, beyond question, intended that all third party debt be discharged. However, if a debtor, explicitly or by implication, agreed to hold harmless and indemnify his or her spouse, former spouse, or child against such a third party debt, that undertaking would survive discharge if and only if the underlying liability were *actually in the nature of alimony, maintenance or support.* Thus, for example, indemnity in terms of mortgage and tax payments on a home or rental and utility payments on an apartment necessary to provide shelter to a spouse and/or child would fit the statutory requirement.

■ On the other hand, a promise to indemnify on joint third party debt, which debt is unrelated to past or present health, shelter or related support needs, would not survive. The logic, of course, being that a divorce or separation ought not preclude

---

**4.** H.R. 95–595 p. 364, S. 95–989 p. 79, U.S.Code Cong. & Admin.News 1978, p. 6320.

The last sentence in the Senate Report, conveying the same thought as the House Report, read as follows:

> The proviso, however, makes nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations as to whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

Senate Rep. No. 95–989, p. 79, U.S.Code Cong. & Admin.News 1978, p. 5865.

An understanding of the precision with which the Congress intended to address this subsection's construction is aided by reference to the testimony specifically cited in the legislative notes; that testimony is reproduced and made an appendix to this opinion. Also appended is a comparison of the two (1975) versions of this subsection discussed in the testimony.

**5.** 124 Cong.Rec.H 11,095–96 (Sept. 28, 1978); S 17,412–13 (Oct. 6, 1978).

meaningful bankruptcy relief. Moreover, it might be argued that a contrary construction would leave a nondebtor spouse or former spouse better off than had the union been preserved and, additionally, in effect might afford that spouse or former spouse the benefits of a discharge on mutually incurred debt unaccompanied by the pain and property losses attendant to bankruptcy.

It must be acknowledged that the decision of the Second Circuit Court of Appeals in *In re Spong*, 661 F.2d 6 (1981), 3 B.R. 619, 6 B.C.D. 604 (Bkrtcy.1980), qualifies the foregoing analysis. There, the Court was confronted with the question of whether counsel fees to a spouse were actually in the nature of support, and it peripherally also dealt with a rather unique New York statute which permitted the award of counsel fees for services to one spouse to be paid by the other spouse directly to counsel. In concluding that counsel fees were actually in the nature of support, which was the primary issue, the Court, Judge Lombard dissenting, permitted counsel to enforce the award directly. This Court is, of course, bound to follow *Spong*, but sees no need to view that decision as going beyond its rather unique facts.

It should be further noted that the Sixth Circuit in *In re Calhoun*, 715 F.2d 1103, 10 B.C.D. 1402 (1983) [whose decision in *In re Waller*, 494 F.2d 447 (1974), was explicitly overruled by the current legislation], gave a broad reading to the ruling in *In re Spong* and thereby came close to fully reincarnating its *Waller* decision. In this Court's view, *Calhoun* is plainly at odds with the explicit language of the statute as well as its legislative history.[6]

---

**6.** The *Calhoun* test for determining whether assumption of joint debts is in the nature of alimony, maintenance, or support and, consequently, nondischargeable, is that a bankruptcy court must find (1) that the assumption of the debts was intended as support, (2) that the assumption had the effect of providing necessary support, (3) that the amount of support represented by the assumption is not so excessive as to be manifestly unreasonable, (4) that at the time of the agreement, the debt assumption did not substantially exceed debtor's present and foreseeable ability to pay, and (5) that it need

## IV

The Supreme Court's award to Mr. Collins represents legal services to Ms. Lewis necessary to enforce the provisions of her divorce decree, is support within the meaning of section 523(a)(5) and, hence, is a nondischargeable debt. The obligation to Ms. Lewis, being a promise to indemnify her against third party debt, the debt itself not being in the nature of alimony and support, is dischargeable.

So Ordered.

## APPENDIX

### BANKRUPTCY ACT REVISION

### HEARINGS

BEFORE THE

### SUBCOMMITTEE ON CIVIL AND CONSTITUTIONAL RIGHTS

OF THE

### COMMITTEE ON THE JUDICIARY HOUSE OF REPRESENTATIVES

### NINETY–FOURTH CONGRESS

SECOND SESSION

ON

### H.R. 31 and H.R. 32 BANKRUPTCY ACT REVISION

FEBRUARY 20, 23, 27, MARCH 1, 5, 8, 12, 15, 18, 19, AND 29, 1976

Serial No. 27

Part 3

require a balance-sheet financial statement. Most of these consumer bankruptcy cases

---

not be bound by the characterization of the obligation in the agreement.

For other decisions on the subject, *see:*
*In re Boyle,* 724 F.2d 681, 11 B.C.D. 613 (8th Cir.1984); *In re Norfolk,* 29 B.R. 377 (Bkrtcy.W. D.N.Y.1983); *In re Draper,* 25 B.R. 518 (Bkrtcy. S.D.Ohio, W.D.1982); *In re Hixson,* 23 B.R. 492 (Bkrtcy.S.D.Ohio, W.D.1982); *In re Petoske,* 16 B.R. 412 (Bkrtcy.E.D.N.Y.1982); *In re Stranathan,* 15 B.R. 223, 8 B.C.D. 472, 3 C.B.C.2d 640 (Bkrtcy.D.Nebraska 1981); *In re Diers,* 7 B.R. 18, 6 B.C.D. 983, 2 C.B.C.2d 1330 (Bkrtcy.S.D. Ohio, W.D.1980).

involving this question, involve statements in writing where the fellow has listed two or three debts, and has written on the bottom of the statement, "I owe no other debts"; and there is nothing on this so-called financial statement about the assets. If his assets and liabilities were juxtaposed, the debts owed would be evident to anyone making the debtor a loan.

We have also covered the problem of new money, or the "flipping" of loans. I think studies have indicated that 75 percent, or even a greater percentage of loans by small loan companies are actually extensions or renewals of existing loans; and each time they go through this loan flipping process they take a new financial statement. We say that if the lender takes a financial statement in connection with the flipping of a loan, and the statement is false, the amount of the debt that is nondischargeable should be the new money that the debtor is obtaining, and not the entire loan, because the first statement that was submitted when the debtor first obtained a loan may have been a perfectly honest statement. And if he subsequently comes along with a dishonest statement and he gets a hundred bucks on the basis of the dishonest statement, that should be a non-dischargeable amount, and not the full amount of the debt which might have been a thousand dollars or more. Our bill is designed to meet this problem.

We couldn't quite see why the Commission selected category 3 fraud, that is the willful and malicious conversion of property of another, and retained that as ground for objecting to dischargeability of any kind of debt, including consumer debt.

One of the problems we often run into is the fact that the fellow has bought something on credit, like a guitar or an amplifier, something which he didn't need; then he gets in a bind for money, the baby is hungry, and he sells the guitar and amplifier for money to buy food for the baby. You have a question whether that is a willful and malicious conversion of the property of another.

The Commission has retained that as a grounds for objecting to the discharge of a consumer bankrupt, and we have also; but we don't understand why the Commission particularly elected to retain this ground for objection to the dischargeability of a consumer debt and eliminated the other two.

We think the real problem probably is the false statement in writing in connection with the extension of loans by small loan companies, and we tried, as I said, to zero in on that problem.

This Judges bill codifies a decision in the Eastern District of Kentucky I have cited in my statement. There are several other decisions throughout the United States now, which also limit the nondischargeable part of the debt to the fresh money advanced in connection with a loan extension transaction.

There is a difference in the two bills * which I think is important on the question of dischargeability of a debt that is incorporated in a property settlement as a result of a divorce decree. Under present law, a debt that is in a property settlement agreement is dischargeable in bankruptcy when it is distinguishable from alimony and support. Of course debts for alimony and support are not dischargeable; other types of debts may be dischargeable.

The court usually examines the property settlement agreement to determine whether the payments provided for by the agreement are in reality alimony and support, or whether they are other kinds of debts, and makes a decision as to what is dischargeable.

The Commission's bill proposes to make any debt nondischargeable as long as it is provided for in a property settlement agreement; and we think that is a serious mistake in the consumer bankruptcy field.

Most of the people who obtain divorces are what you might think of as consumer bankrupts. The husband makes a hundred bucks a week, or something like that, and

[* i.e., the "Judges' bill" and the "Commission bill", H.R. 32, and H.R. 31, respectively (attached) ]

the judge has ruled he must pay the wife $40 a week for child support, and that only leaves him $60 a week to live on. And the decree may say, "Not only do you pay $40 a week child support, but you also shall pay all the debts of the parties." Well, that is unrealistic, he simply can't do that. Forty dollars a week is not enough for the wife and children to live on; and $60 a week, what's left, is not enough for him to live on. That is an insoluble problem, but certainly it shouldn't be complicated by making the debts that the husband owes nondischargeable in bankruptcy simply because he is obligated to pay them in the property settlement agreement.

We tried to solve this problem in our bill by making the debt dischargeable in bankruptcy, regardless of the obligation to pay in a property settlement agreement, if the payments on the debt are for the benefit of some third party, a creditor, rather than for the direct benefit of the wife. Payments directly to the spouse, to the ex-wife for her benefit and for the benefit of the children should be nondischargeable, but payments to some loan company on jointly owed debt should be dischargeable in bankruptcy. Now, we realize the wife may have cosigned on the debt and she has a problem, but perhaps the best solution for that problem would be for her to take bankruptcy also, at a rather minimal expense, rather than require this ex-husband to pay all the fees and obligations arising out of the divorce proceedings. Requiring him to do that means we can't rehabilitate him. So, the divorce laws and the practice in the divorce courts are effectively defeating the objective of rehabilitating some of these debtors. We are trying to shoot at that problem.

MR. BUTLER. Judge, if I could interrupt, with respect to the husband's obligation to purchase over a long term the wife's interest in jointly owned property that is now property of the husband, where does that fit in your dischargeability?

Judge LEE. Well, I think that would not be a problem because it is some sort of an agreement.

MR. BUTLER. That would be a property settlement under which the husband pays the wife for her interest in property which is not divisible.

Judge LEE. If she has a good lawyer she takes a mortgage on it and insures payment. But if she doesn't take a mortgage, I suppose it would be dischargeable.

MR. BUTLER. But not under the Commission bill.

Judge LEE. That's right.

MR. BUTLER. Thank you.

MR. DRIMAN. I wonder if you would elaborate a bit, Judge, on page 9, on the rationale for the Commission's conclusion that all property settlements on a divorce should not be dischargeable. Isn't it a wise thing to say that it is settled: The ex-spouse and the children have a certain amount of alimony, support, and maintenance on the property settlement? Why should the property settlement be reopenable and the alimony, support, and maintenance are not? Your reason was in order to rehabilitate the debtor. But it seems to me that those things are settled. Why should the ex-spouse and the children be involved in this bankruptcy that has come to the ex-husband?

Judge LEE. Well, let me clarify the two problems involved here, one where we have a property settlement agreement to which you refer; and the other aspect where there may not be such an agreement, but the decree says that the husband will hold her harmless. And actually these property settlement agreements more often say that, it is incorporated in the decree, that he will hold her harmless on all the debts of the parties.

Well, I am telling you, this is a very difficult thing for him to do in many instances, where he has a low income, doesn't earn very much. And I think maybe in these proceedings that take place in an era or time of crisis, people may not make good judgments as to what they agree to.

MR. DRINAN. So, you are saying in effect that Household Finance should get priority over the former spouse.

Judge LEE. No, I am saying they should not. I am saying the payment directly to the wife and to the children—

MR. DRINAN. I'm talking about the property settlement. As I read here you say, "This is an unsalutory change which would have a disastrous effect on consumer bankrupts."

Judge LEE. Yes. I'm saying that if the property settlement agreement says he shall pay Household Finance, and therefore that becomes a nondischargeable debt, that he is overburdened, and you can't really give him a fresh start in bankruptcy if you require him to pay that debt. Now, to the extent that it is an actual secured debt— and it may or may not be, I touch on that problem under the exemption problem— that is reached in part under the exemption problem because both bills are saying that loans secured by debts on household goods, other than purchase money security interest, should be dischargeable in bankruptcy. We are saying if this is a sales finance transaction and the seller has a purchase money security interest in this property, even though it's exempt, that his interest remains enforceable.

But, if it's a secondary transaction, involving a loan by a small loan company that has a secured interest in household goods to secure the loan, that loan will be dischargeable in bankruptcy, regardless of the fact they have a security agreement.

So, when you add that, you are relieving him in large part of that obligation, but the problem becomes that these household goods may have been awarded to the ex-wife, or spouse in a divorce proceeding, and that kind of lien may survive unless you change the bill.

MR. DRINAN. All right, I approve of what you suggest later.

Judge LEE. Yes.

MR. DRINAN. But it seems to me that the existing law with respect to property settlement is not satisfactory. So, I ask this,

Judge, is there a further explanation in the Judges bill, or commentary, that further develops the point you make on page 9?

Judge LEE. I don't think so, but I would be pleased to provide you with additional statements.

MR. DRINAN. That is a new point, and I don't recall reading it. I'm not entirely persuaded by what you say here. It seems to me that the present law on this subject is unsatisfactory from my point of view, and I would welcome further documentation. Thank you, Mr. Chairman.

Judge LEE. I refer in my statement to a case which I think causes a problem, and which our bill would change, on this particular question that we are discussing.

MR. BUTLER. I think you will have to forgive Father Drinan, he really got stuck on his divorce. [Laughter.]

Judge LEE. I refer in my statement to a further problem involving the converting of nonexempt to exempt property, which is permitted in California, and which the gentlemen who preceded me referred to, and which the attorney for the debtor takes advantage of, and earns his fee in making these recommendations, certainly. But, this is not necessarily the law in all States. I think it is probably a good practice and should be codified in the Bankruptcy Act, and we make provisions for making it statutory, that the debtor may convert nonexempt property to exempt property on the eve of bankruptcy, absent any fraud on his part; and I have cited some cases that deal with this problem.

On the question of exemptions, what should be the level of exemptions, and what property should fit into the exempt categories, that is a can of worms that is very difficult to make any sense out of.

Both bills, however, are not so far apart on their proposed levels of exemptions, or the nature of the property which should be allowed as exempt. The difference is that the Judges bill establishes a Federal floor, much like the recent Consumer Credit Protection Act, which established a Federal floor on wage exemptions, made them 75-

percent exempt, regardless of what State law said on the question, and overrode the State law on that point. States have more or less fallen into line and changed their laws accordingly.

We are proposing that similarly the Bankruptcy Act provide a Federal floor, but that the States may provide more liberal exemptions. Just as in this example I gave of the Consumer Credit Protection Act, some States exempt all wages, and that is permissible under that act. We are saying that perhaps the best solution to this problem is to have a Federal floor, and then let the States allow greater exemptions if they wish to.

Our bill permits the debtor to take advantage of the more liberal exemption, the one that's best for him.

There is one other dimension to this consumer bankruptcy problem that I refer to, and that is the situation where the consumer is the claimant in the bankruptcy case, he is not the bankrupt, but he is the claimant in a bankruptcy case. There have been proposals—I think by Congresswoman Fenwick who has a bill on the subject to accord priority to consumers who are claimants in bankruptcy cases. I believe she wants to put them at the fourth rung of priority.

She has in mind that frequently consumers buy something at the store on layaway, and they make a deposit. I had a case myself recently where a carpet store was going into bankruptcy, and some people had bought some carpet on layaway; they had a few dollars invested in it and not paid for the remainder of the carpet. When stores go into bankruptcy consumers lose the amount of money paid on layaways. Congresswoman Fenwick has the notion that consumers should be accorded fourth-rung priority in bankruptcy distribution.

I would say that the bankruptcy judges have examined this problem, and we disagree, we don't see any reason for according consumer debts of that character priority in the distribution in a bankruptcy case.

Thank you.

Mr. EDWARDS. Thank you, Judge Lee.

Mr. DRINAN?

Mr. DRINAN. Thank you, Mr. Chairman.

Mr. Ward, I was interested in your statement on page 6 where you say:

The basic premise of the Commission is that attorneys were not doing a good job and were ripping off the consumer.

Don't you think that's a bit of a simplification?

Mr. WARD. Well, I agree; I think it is.

Mr. DRINAN. I mean that allegation against the Commission.

Mr. WARD. That's what I believe they said. I believe they said that in part I; and if you'll go past that for a few minutes while you ask another question, I'll find it.

You are saying what I said is an oversimplification, or is that what they actually said. Except it's my slang unfortunately.

Mr. DRINAN. Regarding the merits of the contention, they did find that there was a problem.

Mr. WARD. I agree. This is the reason for specialization. If you get an attorney who does 6 to 12 bankruptcies a year and no XIII's, this gentleman doesn't know what sections 14, 17, 60, 67, and 70—I recognize I'm throwing numbers at you—but these are just plain simple little sections that everybody who files a bankruptcy petition should know. And we have these kids coming out that have creditor remedies they don't know, and they are wrong.

Mr. DRINAN. I'm just trying to get at your premise.

Mr. WARD. All right.

Mr. DRINAN. You speak about the Commission, and you speak of them demeaningly; you just indicated the professors. There were some professors, but there were distinguished Members of Congress, Federal judges, and so on.

In any event, I'm trying to get at your premise, and I can't, from the 7 pages here.

Mr. WARD. Oh, I'm sorry. The point is that we do need bankruptcy attorneys that know what they are doing, so that the

public can find them out; and there is no question, there are attorneys who make errors. Quite probably, in other parts of the United States, other than California, the need is more prevalent. We are getting more and more attorneys that know what they are doing, they are taking the continuous education, we are doing better.

But I do recognize they come from California. That is why I am aiming, or trying to have the solution that I'm suggesting.

However, the statistics that I pointed out to you from the professor that was here yesterday, he indicates they were missing some...

## COMMENTS

See § 17a(3) of the Bankruptcy Act.

Compare with § 17a(4) of the Bankruptcy Act. The word "debt" in the introductory clause to § 4 56(a) makes the addition of the word "civil" in H.R. 32 redundant

(Compare with § 17a(7) of the Bankruptcy Act. H.R. 31 preserves a debt under a property settlement in connection with a separation or divorce decree from being discharged. H.R. 32 does not. H.R. 32 limits the exception from discharge in cases of alimony or child support to avoid instances where the discharge is used merely to hold the spouse harmless on her obligation to pay the debt

See § 17a(8) of the Bankruptcy Act.

New. The authors of this provision advocate deleting the words "payment of any" to conform the statute to their intent which is to allow the discharge, absent hardship, of any educational debt if the first payment thereon was due more than 5 years prior to the filing of the petition See Commission Report pt. I at 177 But see pt II at 140 n.16 whereas erroneous note in contra

New. A fine payable to a governmental agency for the benefit of a private individual will not be made nondischargeable by this clause.

## H.R. 32

to pay the debt and in contemplation of the filing of a petition under this title by or against him;

(4) any debt not scheduled in time for allowance, with the name of the creditor, if known to the debtor, unless the creditor had notice or actual knowledge of the case under this title permitting timely filing for allowance;

(5) any civil liability for embezzlement or larceny;

(6) any liability to a spouse or child for maintenance or support, or for alimony due or to become due: Provided, however, That a debt shall not be excepted from discharge hereunder merely to hold the spouse harmless on her obligation in any manner to pay the debt;

(7) any liability for willful and malicious injury to the person or property of another;

(8) any educational debt if the first payment of any installment thereof was due on a date less than five years prior to the date of the petition, but such a debt shall be discharged if the court finds that payment of the debt from future income or other wealth will impose an undue hardship on the debtor and his dependents;

(9) any liability to a Federal, State, or local government; and

## H.R. 31

to pay the debt and in contemplation of the filing of a petition under this title by or against him;

(4) any debt not scheduled in time for allowance, with the name of the creditor, if known to the debtor, unless the creditor had notice or actual knowledge of the case under this title permitting timely filing for allowance;

(5) any liability for embezzlement or larceny;

(6) any liability to a spouse or child for maintenance or support, for alimony due or to become due, or under a property settlement in connection with a separation agreement or divorce decree;

(7) any liability for willful and malicious injury to the person or property of another;

(8) any educational debt if the first payment of any installment thereof was due on a date less than five years prior to the date of the petition and if its payment from future income or other wealth will not impose an undue hardship on the debtor and his dependents;

(9) any liability to the extent it is for a fine for the benefit of a Federal, State, or local government; and