**In the Matter of Richard Wayne BOOTH, Debtor.**

**Connie M. BOOTH, Plaintiff,**

v.

**Richard Wayne BOOTH, Defendant.**

**Bankruptcy No. 83–02635–3–11.**
**Adv. No. 84–0330–3–11.**

United States Bankruptcy Court,
W.D. Missouri, W.D.

Oct. 12, 1984.

Kristen G. Stroehmann, Barnett & Ross, Kansas City, Kan., Maurice B. Soltz, Soltz & Shankland, Kansas City, Mo., for plaintiff.

Stephen B. Strayer, Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE DECLARING DEFENDANT'S INDEBTEDNESS TO PLAINTIFF ON ACCOUNT OF $700 MONTHLY SUPPORT PROVISION TO BE NONDISCHARGEABLE IN BANKRUPTCY IN AN AMOUNT TO BE DETERMINED BY THE STATE COURT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff seeks a decree of nondischargeability, pursuant to section 523(a)(5) of the Bankruptcy Code, of sums awarded to her as support, maintenance or alimony in a state court decree of divorce rendered with respect to her former marriage to the defendant. After joinder of the issues by the pleadings, this action came on before the court to be tried on October 10, 1984, whereupon the plaintiff appeared personally and by Kirsten G. Stroehmann, Esquire, her counsel, and the defendant also appeared personally and by Stephen Bruce Strayer, Esquire, his counsel.

The evidence which was then adduced showed that the state divorce court, the District Court of Allen County, Kansas,

entered its decree of divorce in *Connie M. Booth v. Richard W. Booth*, Case No. 810468, on August 10, 1982. The decree purported to be based, according to its recitations, on an "oral stipulation and agreement ... read into the record." As is here pertinent, the divorce decree thus entered by the court provided as follows:

"IT IS ... ORDERED BY THE COURT that Defendant shall pay Plaintiff the sum of One Hundred Twenty-five Thousand Dollars ($125,000.00) as part of property settlement within ninety (90) days from June 4, 1982. This sum shall constitute a lien against all real estate and machinery set over to Defendant and shall be considered as a judgment against the Defendant and the Plaintiff shall have the right to use any and all legal proceedings necessary to satisfy this judgment if the entire $125,000.00 is not paid within ninety (90) days from June 4, 1982. Defendant shall further be required to pay Plaintiff the amount of $700.00 per month for support until the entire $125,000 has been paid in full with the first payment to be made on June 8, 1982, and with said payments to continue on the 8th day of each month thereafter until Defendant has paid the full amount of $125,000.00. Any amount paid for support shall not be considered as part of the $125,000.00 property settlement ..."

The same decree of the state divorce court provided for the setting over of the parties' former residence to the plaintiff with a provision that the defendant should pay all indebtedness thereon. It was the testimony of the plaintiff in the hearing of the action at bar that she understood the $700 per month award to constitute an award of support, as it is classified in the decree; that the defendant made some payments in accordance with the decree but, as of 2 or 3 months ago, was some $14,000 in arrears in his payments; that she was not sure as to what the precise amount of arrearage was at the time of the hearing of this action; that she did not know the total sum of arrears in respect of the house payments; that the state divorce court did not take extensive testimony respecting her need in the hearing which preceded the entry of the decree, although her counsel inquired of her the amount which she needed as support money; that she in fact was not employed at the time of the rendition of the decree and was wholly or largely dependent upon the defendant for support; that she has since become employed at a grain elevator where she earns $170 per week in take home pay; and that she receives a separate award of $250 per month for child support. The defendant testified in the hearing of the action at bar that the written decree which was signed by the state court judge was materially different than the agreement between the parties which was read into the record on the date of the hearing; that his lawyer may have approved the state court decree before its entry but it was not shown to him; that he did not understand that the $700 monthly allowance was to be classified as support; that it was to count against the $125,000 settlement; that it was to terminate in 90 days; that the award was not based on the need of the plaintiff; and that he never agreed that any of the awards to her should be classified as support.

■ On the basis of the record thus made in this court, the defendant contends that, although the state court decree purports on its face to make the award of $700 per month for an indefinite period of time, the bankruptcy court may "look behind" the decree and reform it so as to conform with the parties' true intention. This is especially so, he contends, in a case such as that at bar in which the decree was based, he asserts, on mistake or fraud and did not conform to the oral agreement of the parties. In support of the bankruptcy court's power to "look behind" the state court decree, he cites *In re Calhoun*, 715 F.2d 1103, 1109 (6th Cir.1983). But that case contains language only to the effect that the bankruptcy court "must ... ascertain whether the state court or the parties to the divorce *intended* to create an obligation to support ..." (Emphasis in original.) But that intention is to be arrived at through the processes of construction and

interpretation, not by reformation of the instrument. That the bankruptcy court has no warrant actually to change the decree or agreement is made clear by the actual wording of section 523(a)(5) of the Bankruptcy Code, which predicates the nondischargeability action upon the existence of "a separation agreement, divorce decree, or property settlement agreement." It is further reinforced by the recent decision of the Supreme Court of the United States in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which it was held that actions created by state law may not be tried and determined by the non-Article III Bankruptcy Court. It is true that, with respect to the question of whether a certain award is nondischargeable support or whether it is a dischargeable property settlement, the bankruptcy court need not be bound by the labels placed on the award by the state court, for that determination is one of federal bankruptcy law, not state law. But, in order to make that determination, the bankruptcy court must accept the relationship between the parties which is contained in the decree of the state court. *Matter of Evans*, 2 B.R. 85 (Bkrtcy.W.D.Mo.1979). Relief from the state court decree on the ground that it is erroneous as having been induced by mistake or fraud must be sought and obtained, if at all, in the state court itself.

Even, however, if the bankruptcy court has the power to reform the state court decree, the evidence in this case does not clearly and convincingly show that that decree does not accurately reflect the agreement of the parties which was read into the state court record. No transcript of that record has been produced and submitted in evidence in this case. The defendant's testimony to the effect that he had different "understandings" than those embodied in the written decree may well reflect only misunderstandings or faulty memories respecting what was formerly agreed to. And, further, he basically agrees that he was to pay $700 per month to the plaintiff until the full amount of $125,000 was paid. It is his contention that a three-month limit

was placed upon this award, but, in this, he is directly contradicted by the state court decree which seems unambiguous in its language to a contrary effect.

■ The decisions which govern the issue of whether an award is to be regarded as support or a property settlement in this circuit focus simply on "the crucial issue (of) the function the award was intended to serve." *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983); *Matter of Jensen*, 17 B.R. 537 (Bkrtcy.W.D.Mo.1982). In this action, the $700 per month award was obviously intended to serve the function of support. In her testimony before this court, the plaintiff testified without contradiction that the decree was predicated on an inquiry of her by her counsel as to whether $700 per month would be sufficient in the way of support. Further, the evidence shows that, at the time of entry of the decree, she was not employed and dependent upon the defendant for support. There is virtually no evidence upon which the bankruptcy court could predicate a finding that the $700-per-month award is a property settlement rather than alimony or support.

The defendant, however, argues that the bankruptcy court is empowered to reduce the award from and after the time when the plaintiff became employed at a rate of $170 per week so as to answer only to the remaining need of the plaintiff. Again, *In re Calhoun, supra*, at 1110, is cited to the following effect:

"Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. Such an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law. For this reason, the loan assumption should be treated, to the extent possible, the same as ordinary child support or alimony payments. A universal consideration

of state courts in setting such direct support payments if the supporting spouse's general ability to pay the support ordered. Under the mandate of Congress that the bankruptcy court fashion a common law of bankruptcy and the principle that one cannot contract away bankruptcy rights, the bankruptcy courts in the case of an obligation to hold the former spouse harmless on joint debts must, therefore examine the ability to pay."

The *Calhoun* case, however, was decided in an action entertained by a bankruptcy court under the former Bankruptcy Code with its broad and pervasive grant of jurisdiction to bankruptcy courts.[1] But the Bankruptcy Amendments and Federal Judgeship Act of 1984 is applicable to this action.[2] In consonance with the decision of the Supreme Court of the United States in *Marathon Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the bankruptcy court may not, as a non-Article-III court, adjudicate actions arising under state law.[3]

Accordingly, if modification of the decree in light of the reduced need of the plaintiff (or reduced ability of the defendant to pay) is necessary, the bankruptcy court may and should defer to the defendant's ability to seek modification for change of circumstances in the state divorce court.[4] See *Matter of Kakolewski*, 32 B.R. 494, 495 (Bkrtcy.W.D.Mo.1983), and cases there cited. Traditionally, even when it has jurisdiction of an issue concurrently within bankruptcy court and state court jurisdiction, the bankruptcy court has discretion to require the issue to be litigated in the state court. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); *In re Axton*, 641 F.2d 1262, 1273 (7th Cir.1981); *In re Mountjoy*, 368 F.Supp. 1087, 1094 (W.D.Mo.1973). These authorities seem all the more applicable at a time when the bankruptcy court's authority to determine the matter of the debt which underlies every dischargeability determination is clouded.[5]

---

1. The underlying bankruptcy case in that action was commenced in 1980. The broad jurisdiction granted to the bankruptcy court under section 1471(c), Title 28, United States Code, to hear and determine all actions "arising in or related to" bankruptcy proceedings did not end until December 24, 1982. Cases on appeal prior to that date were held to come within the compass of this jurisdiction.

2. The new jurisdictional provisions are applicable to all cases and actions pending as of and filed after July 10, 1984.

3. "*Northern Pipeline* effectively held that certain private *state* law claims, when adjudicated within the federal system, must be decided by Article III courts." *Kalaris v. Donovan*, 697 F.2d 376, 386 (D.C.Cir.1983) (Emphasis in original.)

4. The defendant may either seek relief from judgment on the basis of mistake or fraud or on the basis of circumstances relative to the plaintiff's need or the defendant's ability to pay. The plaintiff may seek to enforce the state court's award.

5. See *Sapp v. Naughton*, 44 B.R. 670 (Bkrtcy.W. D.Mo.1984), to the following effect: "Some cases decided in the wake of the ruling in *Marathon* ... have stripped the holding to an 'effective' one which is only that actions arising under state law and which, absent bankruptcy, would be triable in state courts are forbidden to be tried

and determined by bankruptcy judges bereft of Article III status. *Kalaris v. Donovan*, 697 F.2d 376, 386 (D.C.Cir.1983), interpreting that *Marathon* ... 'effectively held that certain private *state* law claims, when adjudicated within the federal system, must be decided by Article III courts.' (Emphasis in original.) Even if the *Marathon* holding is so restricted, however, at least part of the determination which a bankruptcy court must make in the process of adjudicating dischargeability *vel non* is a matter arising under state law. That is the issue of the existence or nonexistence of the underlying debt, which is necessarily an issue arising under state law. 'What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.' *Vanston Bondholders Protect. Com. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). And see also IA Collier on Bankruptcy section 17.28A, p. 1742.6 (1976), in which it is noted that 'the suit in the state court would be *on the debt*' (emphasis in original), but that, ordinarily, in bankruptcy proceedings to determine dischargeability and with respect to invoking a right to jury trial, '(t)he matter of the debt is somewhat extraneous, albeit important, and may be considered incidental to the main issue.' But, in the light of the *Marathon* decision, ... can the determination of the existence of the debt be considered incidental to the main

Furthermore, even under the formerly applicable jurisdictional statutes, the bankruptcy courts ordinarily held that, when the state court award was clearly in the nature of alimony, support, or maintenance, they lacked the power to determine need or ability except as it may have existed in connection with the state court decree. See, e.g., *In re Vickers*, 24 B.R. 112, 116 (Bkrtcy.M. D.Tenn.1982), and cases there cited.[6] This only recognized the letter of the governing statute, section 523(a)(5) of the Bankruptcy Code, which, as noted above, seems to permit the bankruptcy court to make the dischargeability determination only in connection with the state court decree. And it further recognized the generally accepted principle that, despite the plenary jurisdiction formerly conferred upon the bankruptcy court by section 1471, Title 28, United States Code, the bankruptcy courts should not intercede in the basic domestic relations matters historically confided to the state courts. As observed above, these considerations have become more, rather than less, paramount with the decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., supra.* And, in making its determination that "the Bankruptcy Court must finally determine that the amount of support represented by (an) assumption (of indebtedness) is not so excessive that it is manifestly unreasonable under the traditional concepts of support," 715 F.2d at 1110, the United States Court of Appeals for the Sixth Circuit in the *Calhoun* case, *supra,* did not have before it a case such as that at bar, in which the state court had clearly and unequivocally stated the rate at which support must be paid in order to be reasonable. Rather, that case involved the transformation of certain "hold harmless" agreements into nondischargeable alimony when that result was not clearly dictated by the clear letter of the state court divorce

decree itself. Under such circumstances, it would be reasonable, in determining whether the state court intended the award to be one of alimony or support, to consider whether treating it to be such an award would result in an award wholly out of proportion to the debtor's ability to pay and the plaintiff's need. But this consideration almost certainly need not be indulged when the state court decree, as here, is unambiguous on this specific subject. In such a case as this, as the *Calhoun* decision itself charges in holding that "the initial inquiry must be to ascertain whether the state court or the parties ... intended to create an obligation to provide support," 715 F.2d at 1109, the bankruptcy court must adhere to the clear intent of the state court.

The courts, in light of the foregoing principles, have further held that, in appropriate circumstances, the bankruptcy courts may make their determination of dischargeability *vel non* in advance of the determination of the precise magnitude of any nondischargeable indebtedness by the state court. *Matter of Kakolewski, supra,* at 496; *In re Harris,* 2 C.B.C.2d 337 (Bkrtcy. S.D.Fla.1980).[7] This procedure seems particularly appropriate in the case at bar in which no evidence, beyond the testimonial statements of the plaintiff, which are admittedly estimates, has been adduced as to the arrearage which is actually due on the $700-per-month support provision.[8] Further, it is recognized that, in this circuit, the debtor's assumption of a loan, insofar as it is necessary "to keep a roof over (the spouse's and his children's) heads", is considered to be nondischargeable alimony or maintenance. *Poolman v. Poolman,* 289 F.2d 332, 335 (8th Cir.1961); *In re Williams, supra.* But it is not possible, under the evidence which has been submitted to this court, to determine how much is currently due on any such loan assumption.

issue for the purpose of determining when the federal judicial power is engaged?"

**6.** See also *Matter of Jensen,* 17 B.R. 537, 540 (Bkrtcy.W.D.Mo.1982).

**7.** As in the *Harris* case, the state court, bound to apply the same law as this court would apply,

will render a judgment which would be *res judicata* in this court.

**8.** See the summary of plaintiff's testimony on page 675 of the text of this memorandum, *supra.*

According to the plaintiff's testimony in the hearing of this action, she does not know how much is due, and the documentary evidence allows for no clarification of this uncertainty.[9] Accordingly, it would constitute pure speculation for this court to render a decree of nondischargeability with respect to the claim based upon an assumption of a loan on the residence. Rather, this matter should be left to the state court, which, after all, has jurisdiction concurrent with the bankruptcy court to make the determination of nondischargeability.[10]

In arguing that the $700-per-month award made by the state court decree should not be considered to be nondischargeable alimony, the defendant asks the court to observe that the award does not possess each and every one of the attributes which some of the cases hold to be indicia of an award of alimony or maintenance—e.g., terminability on remarriage or death and the like.[11] But these decisions do not hold that the award must possess each and every indicia set out in them in order to qualify as an award of alimony or maintenance. And the evidence in this action, as pointed out above, sufficiently shows that the intended function of this award is that of support.

For the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the award of $700 per month payments made in the state court decree of August 10, 1982, be, and it is hereby, declared to be nondischargeable in bankruptcy in an amount to be determined by the state divorce court. The plaintiff is accordingly granted relief from the automatic stay for the purpose of bringing the action in the state court which may be necessary to determine the amount of the nondis-

chargeable indebtedness and to determine the dischargeability *vel non* of any loan assumption on plaintiff's residence. The defendant has leave of this court to prosecute or defend actions necessary to such determinations.

9. The copy of the state court decree which has been adduced in evidence purports to set over to the plaintiff a certain tract of real property and to provide that "Defendant shall pay any indebtedness thereon and shall hold Plaintiff harmless therefrom." But no amounts of payment are specified.

10. Exclusive jurisdiction as to the dischargeability of debts is committed to the bankruptcy court only with respect to those species of non-

dischargeability described in section 523(a)(2), (4), and (6). See section 523(c) of the Bankruptcy Code. Otherwise, jurisdiction is concurrent with the state courts.

11. If it were required that *all* of the indicia were present to constitute alimony, support or maintenance, such a holding would appear contrary to the test enunciated in this circuit in *In re Williams,* 703 F.2d 1055 (8th Cir.1983).