**In the Matter of Paul Dean MATHES and Debra Ann Mathes, Debtors.**

**Jean MATHES, Plaintiff,**

**v.**

**Paul Dean MATHES, Defendant.**

**Bankruptcy No. 85–00241–SJ.
Adv. No. 85–0260–SJ.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Sept. 4, 1985.

John Manring, St. Joseph, Mo., for plaintiff.

Hugh A. Miner, St. Joseph, Mo., for defendant.

SUPPORT IS OBTAINED FROM STATE COURT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff sues for a decree of nondischargeability with respect to an agreement which she entered into with the defendant, her former spouse, to pay some $168 per month on a family residence for her and the children of the marriage. The defendant denies that any liability which he may have under the agreement would be nondischargeable under the provisions of § 523(a)(5) of the Bankruptcy Code. And the issues thus joined [1] came on before the court for hearing on August 20, 1985, in St. Joseph, Missouri. The plaintiff appeared personally and by John Manring, Esquire, her counsel, and the defendant also appeared personally and by counsel, Hugh A. Miner, Esquire.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DISMISSING COMPLAINT WITHOUT PREJUDICE TO ITS REINSTATEMENT FOR POSSIBLE DISCHARGEABILITY DETERMINATION IF AND WHEN ADDITIONAL AWARD OF ALLEGED MAINTENANCE AND

The evidence which was then adduced showed with conclusivity that the agreement upon which the plaintiff predicates her claim of nondischargeable support and maintenance was entered into after the state court decree of dissolution of the parties' marriage had been entered; that it was not thereafter submitted to and approved by the state dissolution court; that the agreement itself expressly recited that the award embodied in it was not to be considered as alimony; [2] and that, accord-

1. Neither the pleadings in this action nor the evidence otherwise makes a case for the existence of past-due child support other than the failure to make the $168 monthly payments contained in the post-decretal agreement. When the court inquired of the status of the past due support amounts, only general answers were given which would require the court to speculate in making any nondischargeable award on account of the past due support amounts.

2. The agreement, dated March 20, 1980, provides that, in the event a certain loan is granted to Paul Dean Mathes, "the said Paul Dean Mathes agrees to pay Jean Ann Mathes the sum of $168.00 per month during the existence of said loan and further agrees to pay the sum of 13% (thirteen percent) of any value appreciation determined to be due to the Government under the terms of the subsidy repayment agreement which must be executed by Jean Ann Mathes as a condition of obtaining said low-interest loan." It also, *inter alia,* provides that "(t)he terms of this agreement are contractual and not to be construed as maintenance and are not subject to modification under the dissolution of marriage law, and can only be modified or amended by written agreement of the parties hereto."

ing to the uncontradicted evidence,[3] the purpose or function of the award was to put "a roof over the heads" of the plaintiff and her children.

 These facts clearly demonstrated that the trial and determination of the material issue of whether the new agreement should be characterized as nondischargeable maintenance and support or a dischargeable property settlement should be initially determined by the state dissolution court. It is fundamental that the bankruptcy court, in making the dischargeability determination, cannot modify the basic award made by the state dissolution court. *Matter of Booth*, 44 B.R. 674, 675 (Bkrtcy. W.D.Mo.1984) ("[T]he bankruptcy court 'must ... ascertain whether the state court or the parties to the divorce *intended* to create an obligation to support ...' But that intention is to be arrived at through the process of construction and interpretation, not by reformation of the instrument.") It is not within the lawful powers of a bankruptcy court to redetermine the basic need of the plaintiff according to changed circumstances and thereby substitute its own award for the of the state dissolution court. *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983) (If the rule were otherwise, then the dischargeability determination itself might be subject to change according to the debtor's ability to pay; but "if [debtor's] obligation to [his former spouse] is declared dischargeable, she will never be able to collect it."); *Matter of Vickers*, 24 B.R. 112, 116 (Bkrtcy.M. D.Tenn.1982). ("[U]nder the governing principles, the bankruptcy court must make its determination based upon the intended function of the award at the time of entry of the state court dissolution decree.") Simply to supplement the state court award before the state court had an opportunity to *determine whether it should be made at all* would violate this cardinal principle. As has been reiterated by this and other courts on many prior occasions, it is the state court which must define the relationship between the parties before the bank-

ruptcy court, or any other court, can make the dischargeability determination. *Matter of Evans*, 2 B.R. 85, 90 (Bkrtcy.W.D.Mo. 1979). After this initial issue has been resolved, the state court may, in the application of the appropriate federal law, make the dischargeability determination, see *Matter of Kakolewski*, 32 B.R. 494 (Bkrtcy. W.D.Mo.1983), or the action may be reinstated in this court for the dischargeability determination.

In the meantime, in accordance with the principles expressed in *Matter of Naughton*, 44 B.R. 670 (Bkrtcy.W.D.Mo.1984), and in the show cause order previously issued in this action, it is hereby

ORDERED AND ADJUDGED that the within complaint be, and it is hereby, dismissed without prejudice, subject to *possible* reinstatement for the dischargeability determination if and when the state court determines whether the subject award should be made to plaintiff. Plaintiff, of course, has relief from the automatic stay to seek the appropriate orders of the state court.

---

**3.** That the purpose of the agreement was to "put a roof over the heads" of the family was testi-

monially admitted by the defendant.