848 F.2d 190
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re FASANO/HARRISS PIE CO., Debtor.
WALTER E. HELLER & CO., and Richard C. Remes, Trustee,
Plaintiffs-Appellees,
v.
FOOD MARKETING ASSOCIATES, LTD., Defendant-Appellant.
 No. 87-1257.
 United States Court of Appeals, Sixth Circuit.
 May 9, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Food Marketing Associates, Ltd. ("FMA") appeals the district court decision in favor of plaintiffs Walter E. Heller & Co. ("Heller & Co."), and Richard C. Remes, Trustee. See 70 Bankr. 285 (W.D.Mich.1987). The district court, in its appellate capacity, affirmed the decision of a bankruptcy court, which had found FMA liable to debtor Fasano/Harriss Pie Co. ("Fasano/Harriss") for a debt arising out of FMA's acceptance of two shipments of Fasano/Harriss frozen pies. See 43 Bankr. 864 (Bankr.W.D.Mich.1984). We affirm.
 
 
 2
 The underlying facts are more fully set forth in the bankruptcy court's opinion and will only be briefly recapped here. FMA is an institutional food broker located in St. Louis, Missouri. In that role, FMA had ordered frozen pies on behalf of its clients from a Chicago producer named Fasano Pie Co. ("Fasano of Chicago"). Prior to the events giving rise to this action, FMA had not dealt with Fasano/Harriss, a Michigan corporation. No evidence in this record suggests any corporate affiliation between Fasano/Harriss and Fasano of Chicago.
 
 
 3
 In April of 1982, a customer of FMA received two shipments of frozen pies from Fasano/Harriss. The customer rejected both shipments and referred the carrier to its broker, FMA. FMA's president, Paul Phillips, instructed the carrier to place the pies in cold storage, and he then attempted to contact Fasano of Chicago, from which he claimed the pies had been ordered. Mr. Phillips received no reply from Fasano of Chicago and subsequently transferred the pies to another company that he owned, Food Products International, Inc. ("Food Products"). The transfer to Food Products was evidenced by two FMA invoices, which were dated April 22 and bore an invoice price of $26,088.41. Food Products sold the pies over the course of the next two months for $18,718.16 and remitted that amount to FMA. No money was paid to Fasano/Harriss.
 
 
 4
 After Fasano/Harriss entered bankruptcy proceedings, Heller & Co. and the Trustee brought this action against FMA on a breach of contract theory. The bankruptcy court concluded that no express contract existed between Fasano/Harriss and FMA, but nonetheless held FMA liable on the equitable theory of quasi-contract or unjust enrichment. The court found FMA unjustly enriched in the amount of $26,088.41, the amount reflected on FMA's April 22 invoices to Food Products, thus rejecting both Fasano/Harriss' contention that $36,340.04 was owed (the amount at which Fasano/Harriss invoiced the pies), and FMA's claim that it should be held liable, if at all, only for $18,718.16 (the sum actually received upon resale of the pies). The bankruptcy court also rejected FMA's argument that the amount of recovery should be offset by a debt allegedly owed to FMA by Fasano of Chicago. The district court on appeal affirmed the bankruptcy court in all respects. This timely appeal ensued.
 
 
 5
 On appeal FMA renews the arguments that the district court rejected. FMA contends that it should not be held liable because: (1) plaintiff Heller & Co. is without standing to recover from FMA; (2) the unjust enrichment theory was not pleaded; and (3) the unjust enrichment theory has no application where an express contract exists. In addition, FMA claims that the bankruptcy court clearly erred in setting the amount of recovery, and that an offset should have been allowed under 11 U.S.C. Sec. 553(a) (1982).
 
 
 6
 Initially, we note that we must accept the bankruptcy court's findings of fact unless "clearly erroneous." See In re Calhoun, 715 F.2d 1103, 1110 (6th Cir.1983); In re Albert-Harris, Inc., 313 F.2d 447 (6th Cir.1963); Bankr.R. 7052 (incorporating Fed.R.Civ.P. 52). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-76 (1985). The lower courts' conclusions of law, on the other hand, are subject to plenary review by this court. See Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986); Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 143 (6th Cir.1983).
 
 
 7
 We first address FMA's contention that it should not have been held liable because plaintiff Heller & Co. is without standing to pursue this claim on behalf of the debtor. Heller & Co., which is the holder of a perfected security interest in Fasano/Harriss' accounts receivable, was granted relief from the automatic stay by the bankruptcy court and was authorized to collect those accounts. See 43 Bankr. at 865 n. 1. FMA concedes these facts, but nonetheless contends that this authorization did not empower Heller & Co. to collect the alleged debt in the instant case, since no contract existed between FMA and Fasano/Harriss creating an account receivable that was subject to Heller & Co.'s security interest. The district court correctly pointed out, however, that because the Trustee in bankruptcy has, at all times, also been a party to this lawsuit, the plaintiffs' right to recover from FMA is not solely dependent upon Heller & Co.'s authorization to collect the debtor's accounts receivable. As the district court stated:
 
 
 8
 Whether Heller is the proper party to receive the money awarded is irrelevant to a determination of [FMA's] liability. Any objections to Heller's receipt of the funds awarded is an issue between the creditors of Fasano/Harriss whose interests are presumed to be adequately represented by the trustee.
 
 
 9
 70 Bankr. at 284 n. 2. We agree with the district court's analysis of this issue. In addition, we note that the presence of the Trustee as a party to this suit precludes any threat of a double recovery against FMA. FMA's objection to Heller & Co.'s status as a plaintiff, therefore, does not provide a basis to avoid liability.
 
 
 10
 FMA next argues that it should not have been held liable under the equitable doctrine of unjust enrichment because the theory was not pleaded by plaintiffs. Rather, plaintiffs brought an action at law alleging that FMA had breached an express contract. Rule 54(c), however, supports the granting of equitable relief in such circumstances: "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed.R.Civ.P. 54(c); see Bankr.R. 7054(a) (incorporating Fed.R.Civ.P. 54(c)). Rule 54(c) "makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both." Fed.R.Civ.P. 54(c) advisory committee's note; see also 10 C. Wright, A. Miller & M. Kay, Federal Practice and Procedure Secs. 2662, 2664 (2d ed. 1983). According to Wright & Miller, "a recovery based on quantum meruit [or on] a theory of unjust enrichment ... may be allowed in an action instituted for breach of contract." Id. Sec. 2664 at 166-67 & nn. 28-29 (collecting cases). Thus, so long as the plaintiffs' proof justifies the relief which is ultimately granted, see id. Sec. 2662 at 132, and the defendant is not thereby prejudiced, see id. Sec. 2664 at 146-51, Rule 54(c) permits the court to grant relief not specifically requested.
 
 
 11
 Upon a careful review of the record and the arguments on appeal, we conclude that these prerequisites have been fully satisfied in the instant case. FMA has clearly received a benefit from Fasano/Harriss, and it would be inequitable to permit FMA to retain the benefit. See Estate of McCallum, 153 Mich.App. 328, 395 N.W.2d 258, 261 (1986) (per curiam); Restatement of Restitution Sec. 1 (1937). In addition, FMA has made no showing of prejudice. Accordingly, we hold that the bankruptcy court properly held FMA liable under the theory of unjust enrichment.
 
 
 12
 In its final argument aimed at avoiding liability, FMA contends that the bankruptcy court erred in granting equitable relief when it first found an express contract between Fasano/Harriss and Fasano of Chicago. FMA thus seeks to invoke the rule that a plaintiff may not recover upon a contract implied in equity "where an alleged express contract, in substance, covers the same subject-matter." Superior Ambulance Serv. v. City of Lincoln Park, 19 Mich.App. 655, 173 N.W.2d 236, 240 (1970); see also Sullivan v. Detroit, Y. & A.A. R.R., 135 Mich. 661, 98 N.W. 756 (1904). As the district court found, however, the bankruptcy court merely assumed that an independent contract existed between Fasano of Chicago and Fasano/Harriss for the purpose of servicing the pie order in the instant case. This assumption was intended only to explain, as best the court could on the limited factual record before it, how Fasano/Harriss came to deliver the pies when Mr. Phillips testified that he had dealt solely with Fasano of Chicago. The record is devoid of any evidence, however, suggesting that the contract between the pie companies provided that Fasano/Harriss would look to Fasano of Chicago for payment for the pies. Under these circumstances, it cannot be said that the arrangement between the two pie companies "covers the same subject-matter" as the contract that the bankruptcy court implied between FMA and Fasano/Harriss. Recovery under the quasi-contract theory, therefore, is not objectionable on this ground. We accordingly affirm the bankruptcy court's decision finding FMA liable to plaintiffs under the equitable theory of unjust enrichment.
 
 
 13
 We next turn to FMA's challenges to the calculation of damages. FMA contends that the bankruptcy court clearly erred in setting damages at $26,088.41 because FMA received only $18,718.16 when the pies were sold. The bankruptcy court rejected the resale price as the basis of damages, however, on the ground that the resale of the pies during the two months after receipt did not necessarily reflect the market value of the pies upon receipt, especially since there had been no showing by FMA that it had tried to find a buyer upon receipt of the goods. The bankruptcy court held that a more reliable indication of the amount of unjust enrichment was found in FMA's two April 22 invoices to Food Products, which totaled $26,088.41.
 
 
 14
 FMA objects to this holding on the ground that the bankruptcy court had insufficient reason to conclude that both FMA invoices represented the transfer of the pies in question from FMA to Food Products. FMA concedes that Invoice No. 1418, in the amount of $17,207.57, was part of the transaction at issue. Mr. Phillips, in an interrogatory answer, stated that the value ascribed to Invoice No. 1418 was based on fair market value as of April 22. Since the amount of Invoice No. 1418 ($17,207.57) was close to the amount actually received ($18,718.16), FMA contends that $18,718.16 must be considered the value of the pies on April 22. On the other hand, the second invoice, No. 1424 in the amount of $8,880.84, was not introduced into evidence in the bankruptcy court. See 43 Bankr. at 869 n. 10. Given the lack of specific information concerning the goods represented by Invoice No. 1424, FMA further argues that the bankruptcy court was not justified in concluding that No. 1424 also was part of the instant transaction.
 
 
 15
 We conclude that the bankruptcy court was entirely justified in holding that both invoices were part of the pie transfer to Food Products. In the previous three years, FMA had not invoiced any goods to Food Products. Yet on April 22, a short time after FMA took possession of the two pie shipments, it invoiced two sets of goods to Food Products. A comparison of the contents of Invoice No. 1418 with the original Fasano/Harriss invoices, however, discloses that No. 1418 did not include all the pies that FMA received. In addition, FMA offered no alternative explanation for the contents of Invoice No. 1424. Under these circumstances, even though No. 1424 was not entered into evidence, the court's conclusion that No. 1424 was also a part of this transaction was quite reasonable. Since Mr. Phillips had testified that the invoice price for No. 1418 was derived from fair market value as of April 22, it was also reasonable to infer that the invoice price in No. 1424 was similarly based on fair market value. The court's conclusion that the value of the pies on April 22 was $26,088.41, therefore, is not clearly erroneous.
 
 
 16
 Moreover, for some unexplained reason a copy of Invoice No. 1424 has found its way into the record on appeal, and a review of it only confirms the bankruptcy court's decision. The invoice clearly shows that it represents a transfer of pies from FMA to Food Products. In addition, a comparison of both Nos. 1418 and 1424 with the original Fasano/Harriss invoices reveals that there is almost a one-to-one correspondence: the same types of pies, including product codes, appear without variation on both sets of invoices; and the quantities listed are almost exactly the same, with FMA's invoices missing only four out of an original 4,000 units. It cannot be doubted, therefore, that No. 1424 also evidenced the transfer of Fasano/Harriss pies by FMA. The bankruptcy court's conclusion that FMA was unjustly enriched in the amount of $26,088.41 is affirmed.
 
 
 17
 Finally, FMA contends that the bankruptcy court erred in refusing to allow an offset under 11 U.S.C. Sec. 553(a) (1982) for a debt allegedly owed to FMA by Fasano of Chicago. By the terms of section 553, however, an offset is permitted only for a "mutual debt." Id.; see 4 Collier on Bankruptcy p 553.04 (15th ed. 1980). Since the bankruptcy court found no agency relationship, either express or implied, between Fasano of Chicago and Fasano/Harriss, it further concluded that the debt allegedly owed to FMA by Fasano of Chicago was not "mutual" as between FMA and Fasano/Harriss. We agree. The bankruptcy court's conclusion that FMA failed to establish the requisite agency relationship is not clearly erroneous. In such circumstances, the alleged debt between FMA and Fasano of Chicago is not "in the same right and between the same parties, standing in the same capacity," as the debt between FMA and Fasano/Harriss. See id. p 553.04 at 553-18 & n. 10. Accordingly, since the requirement of mutuality was not satisfied, the courts below properly held that an offset was not permissible under section 553(a).
 
 
 18
 For the foregoing reasons, the decision of the district court is AFFIRMED.