**In re Frank Roy DAVIS, Debtor.**

**Michelle Lynn Davis, Plaintiff,**

**v.**

**Frank Roy Davis, Defendant.**

**Bankruptcy No. 00–10636.**
**Adversary No. 00–1042.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 4, 2001.

---

Phyllis Schiff, Fort Thomas, KY, for plaintiff.

K. Dreyer, for defendant.

## MEMORANDUM OF DECISION

JEFFERY P. HOPKINS, Bankruptcy Judge.

In this adversary proceeding, Michelle Lynn Davis ("Ms. Davis"), the former

spouse of Frank Roy Davis ("Mr. Davis"), seeks a determination that Mr. Davis' obligation to hold her harmless on certain joint debts assumed by Mr. Davis in their divorce decree is a nondischargeable debt for alimony, maintenance or support pursuant to 11 U.S.C. § 523(a)(5). Because we find that the domestic relations court did not intend to create a support obligation for the benefit of Ms. Davis when it imposed the hold harmless obligation upon Mr. Davis the indebtedness arising from the divorce decree is dischargeable. For this reason, judgment will be awarded in favor of Mr. Davis and Ms. Davis' complaint will be dismissed.

## I

Section 523(a)(5) excepts from discharge debts "for alimony to, maintenance for, or support of" a former spouse. The parties' divorce decree provides that Mr. Davis was to assume several joint debts and hold Ms. Davis harmless on the same. The language creating the hold harmless obligation, however, does not expressly designate it as alimony, maintenance or support. When a debt arising out of a divorce decree or separation agreement is not expressly designated as alimony, maintenance or support, courts within the Sixth Circuit must apply a four-part test set forth in Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir.1983) to determine whether the debt constitutes alimony, maintenance or support under § 523(a)(5). The first prong of the Calhoun test requires a determination of whether the parties or the state court issuing the divorce decree intended to create an alimony, maintenance or support obligation.[1] Id. at 1109. When making this determination, bankruptcy judges may consider any relevant evidence, including factors considered by state courts when deciding whether to award support. Id. at 1109; Harvey v. McClelland (In re McClelland), 247 B.R. 423, 426 (Bankr. N.D.Ohio 2000). Such factors that are relevant to this determination include: (1) the relative income of the parties; (2) the duration of the marriage; (3) the presence of minor children; (4) marital fault; (5) the nature of the obligations assumed (provision of daily necessities indicates support); (6) the language of the divorce decree; and (7) whether the obligation terminates upon death or remarriage. See Ohio Rev.Code Ann. § 3105.18(C)(1); Calhoun, 715 F.2d at 1108 n. 7; McClelland, 247 B.R. at 426. Applying the foregoing standard to the evidence presented at trial, the Court concludes that the domestic relations court did not intend to create an alimony, maintenance or support obligation when it ordered Mr. Davis to assume certain of the parties' marital debts and hold Ms. Davis harmless on them.

## II

The Davises were married on October 26, 1996. On November 23, 1999, a Decree of Divorce terminating the marriage was entered by the Court of Common Pleas, Division of Domestic Relations, Hamilton County, Ohio. Mr. Davis filed his bankruptcy petition on February 11, 2000. The parties have two children from the marriage, ages three and one at the time of the divorce. Relevant to this proceeding, the divorce decree provided: (1) Mr. Davis was found to be guilty of adultery; (2) Mr. Davis was ordered to assume a debt to Sears in the approximate amount of $1,766.53, a debt to Monitronics (home se-

---

1. In the event that the debt is created by a separation agreement between the parties, the intent of the parties (not the domestic relations court) becomes the focus. Because the debt before this Court was created by the divorce decree itself, in the absence of a separation agreement, the intent of the domestic relations court is controlling.

curity) in the amount of $63.50, any remaining indebtedness to Dillards and Kay Jewelers, and all taxes, utilities, insurance and mortgage debts (of which there were three) on the marital residence; (3) Mr. Davis was ordered to hold Ms. Davis harmless on these debts; (4) Mr. Davis was awarded the marital residence and Ms. Davis was ordered to quitclaim her interest therein; (5) Ms. Davis was awarded custody of the two children; (6) Mr. Davis was ordered to pay $679.00 monthly for child support; and (7) the court specifically ordered that neither party pay spousal support to the other.

Ms. Davis is twenty-four years old and has a high school education. Mr. Davis has a G.E.D.[2] At the time of their divorce, Ms. Davis earned less than $13,000.00 annually as an employee at a day care facility. At the same time, Mr. Davis earned approximately $28,000.00 annually as a manager of a fast-food restaurant.

### III

■ Ms. Davis argues that she waived her right to spousal support in reliance upon Mr. Davis' commitment to assume the joint debts and hold her harmless for those debts. She therefore concludes that the debt assumption constitutes a support award, although not designated as such. Several factors arguably support her position. Indicative of Ms. Davis' need for support is: (1) the income disparity between the parties of approximately $15,000.00; (2) the presence of two young children for which she has been granted custody; and (3) the finding of marital fault on the part of Mr. Davis. However, there are also multiple factors that militate against a support award. Such factors include: (1) a marriage of only three years; (2) the obligations assumed do not appear to have provided Ms. Davis with daily necessities[3]; and importantly (3) the language of the divorce decree itself. As to the actual language of the decree, several aspects are noteworthy. It is hard to overlook the fact that the decree expressly provides that both parties waive spousal support. Second, the hold harmless obligation is not designated as an award in lieu of spousal support. Third, the language creating the hold harmless obligation is located within paragraphs five through nine of the divorce decree, which provide for a division and distribution of property between the parties.[4] Finally, the obligation does not terminate upon the death or remarriage of Ms. Davis.

■ In light of the foregoing factors, the Court concludes that the evidence preponderates in favor of a finding that the domestic relations court did not intend to

2. Although the record does not reflect Mr. Davis' age, he appeared to be roughly the same age as Ms. Davis.

3. Because Mr. Davis was awarded the marital residence, his assumption of debt related thereto does not have the effect of providing Ms. Davis with daily necessities. *See Malone v. Hackworth (In re Hackworth)*, 27 B.R. 638, 640 (Bankr.S.D.Ohio 1982) (Perlman, J.) (concluding that debtor's assumption of mortgage debt did not provide ex-spouse with a necessity of life insulated from the reach of marital creditors where debtor was awarded marital residence). The record contains no evidence that the other four consumer debts served to provide Ms. Davis with daily necessities following their divorce.

4. Although the divorce decree does not have separate sections with clearly identified headings, it is apparent that the decree is structure as follows:

| | |
|---|---|
| Paragraphs 1–2 | Introduction and Procedure |
| Paragraph 3 | Grounds for Divorce |
| Paragraph 4 | Award of Divorce |
| Paragraphs 5–9 | Distribution of Property |
| Paragraph 10 | Custody of Children |
| Paragraphs 11–17 | Support of Children |
| Paragraph 18 | Spousal Support |
| Paragraph 19 | Costs and Fees |

create a support obligation when it ordered Mr. Davis to hold Ms. Davis harmless on their joint debts. This conclusion is further supported by a recent decision out of the Northern District of Ohio with strikingly similar facts. In *Findley v. Findley (In re Findley)*, 245 B.R. 526 (Bankr. N.D.Ohio 2000) (Snow, J.), the debtor ("Mr. Findley") and his ex-spouse ("Ms. Findley") were married for six years before their divorce. Ms. Findley was awarded custody of the parties' single child. A separation agreement, incorporated into the decree of divorce, provided that Mr. Findley was awarded the marital residence in return for holding Ms. Findley harmless on several debts. The parties further agreed that neither party was to pay spousal support to the other. Mr. Findley filed his bankruptcy petition three months after the parties were divorced. Ms. Findley commenced an adversary proceeding, seeking a determination that the hold harmless obligation was nondischargeable pursuant to § 523(a)(5).[5] Similar to Ms. Davis, the plaintiff in *Findley* argued that the hold harmless obligation was a support debt because she discontinued pursuit of spousal support once her ex-husband agreed to hold her harmless on the debts in question.[6] In reaching its decision the *Findley* court likewise scrutinized the intent of the parties when entering into the hold harmless agreement. The court concluded that the agreement was not intended to serve as a support obligation. Although the court found it to

be a "close question," it was persuaded by the following factors: (1) the hold harmless obligation was located within the provisions of the separation agreement that divided the parties' assets; and (2) the obligation was never characterized in the agreement as being imposed in lieu of spousal support. By comparison with this case, Ms. Davis' argument is even less compelling than the plaintiff in *Findley*. Here, there is no evidence in the record that Ms. Davis made any attempt to seek spousal support. Absent proof that spousal support was sought or even desired by Ms. Davis in the domestic relations proceedings, it is difficult for this Court to find that the hold harmless obligation was intended as spousal support in lieu of a direct award for the same. "There is no basis for the bankruptcy court to create a non-dischargeable obligation for the debtor that the state court granting the divorce decree or the parties to the proceedings did not create." *Calhoun*, 715 F.2d at 1109.

### IV

Ms. Davis contends, however, that the hold harmless obligation should also be nondischargeable because Mr. Davis never intended to uphold his commitment to hold her harmless but agreed to do so knowing that he would immediately turn around and attempt to discharge the debt in bankruptcy.[7] In support of her position, Ms. Davis relies upon the decision of *Arterburn v. Arterburn (In re Arterburn)*, 15

---

**5.** In *Findley*, the debtor's former spouse argued in the alternative that the obligation was nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Ms. Davis, however, did not pursue a similar alternative theory of nondischargeability under § 523(a)(15) in the proceeding before this Court.

**6.** Unlike Ms. Davis, the plaintiff in *Findley* actually filed a motion for spousal support in the domestic relations court. She withdrew

the motion when the hold harmless agreement was reached with her ex-husband.

**7.** Mr. Davis did testify that: (1) he was at the final divorce hearing; (2) he knew that he would not be able to comply with the terms of the decree; (3) he made no objections when the judge asked him about the divorce decree; and (4) prior to the entry of the divorce decree, he decided to file for bankruptcy.

B.R. 189 (Bankr.W.D.Okla.1981). Although the record supports Ms. Davis' factual contentions, her legal argument is misplaced.

Upon a closer reading, the holding in *Arterburn* actually supports this Court's construction of § 523(a)(5). That case involved a debtor who, four days after his divorce, sought to discharge a hold harmless obligation in bankruptcy. Like Mr. Davis, the debtor in *Arterburn* never intended to fulfill his obligation. Under alternative theories of prosecution, the debtor's ex-spouse sought a determination that the obligation was nondischargeable. The court concluded that the debt was nondischargeable. However, the *Arterburn* court's holding was not premised upon § 523(a)(5). Rather, the court concluded that § 523(a)(5) was inapplicable because the divorce decree contained no indication that the hold harmless obligation was imposed in lieu of alimony or spousal support. In *Arterburn* the bankruptcy judge instead found that the hold harmless obligation was only nondischargeable because debtor's ex-spouse had alternatively pled and proved a case of fraud under 11 U.S.C. § 523(a)(2)(A). In this case, Ms. Davis never pled nor proved all of the elements required to show that her ex-husband violated the anti-fraud provisions of § 523(a)(2)(A). Unlike *Arterburn*, the record in this case is silent regarding any intentional misrepresentation by Mr. Davis upon which Ms. Davis reasonably relied to her detriment during formulation of the final divorce decree. Therefore, Ms. Davis' argument that *Arterburn* renders Mr. Davis' obligation nondischargeable under § 523(a)(5) must be rejected.

## V

For the foregoing reasons, the debt of Frank Roy Davis to Michelle Lynn Davis is subject to discharge. The complaint

(Doc. 1) filed by Michelle Lynn Davis on March 31, 2000, will be **DISMISSED.** A judgment to this effect will be entered.

