In re Richard W. SANDERS, Debtor.

Richard W. SANDERS, Plaintiff,

v.

Diana LANFARE, Defendant.

Bankruptcy No. 94–3151.
Related No. 94–32233.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Sept. 13, 1995.

James M. Perlman, Toledo, OH, for plaintiff.

Isobel O'Brien, Sylvania, OH, for defendant.

### MEMORANDUM OPINION
### AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial upon Plaintiff's Complaint to Determine the Dischargeability of Debt. At the Trial, the Parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that Plaintiff should obtain a discharge in the amount of Ten Thousand Seventy-two Dollars ($10,-072.00), and that this discharge shall pertain to the joint credit card debts of the parties herein. All other contested debts of Plaintiff are hereby found non-dischargeable.

### FACTS

Plaintiff and Defendant were married on June 23, 1976, and have two children who were born on October 23, 1979, and December 23, 1981. On July 29, 1993, a Judgment of Divorce was signed by the Circuit Court for the County of Monroe, State of Michigan, (hereafter the "State Court") wherein the Defendant was awarded custody of the minor children. In the Judgment of Divorce, the Plaintiff was to pay the sum of One Hundred and Five Dollars ($105.00) per week in child support. The Judgment of Divorce also expressly states that no alimony was awarded to either party. In the property settlement section of the Judgment of Divorce, the Defendant (the Defendant in this case was also the Defendant in the State Court case) was awarded legal title and use of the marital home. The Plaintiff was given a mortgage in the amount of Thirty Thousand Five Hundred Dollars ($30,500.00) in the home, which represented one half of the equity the parties had in the home at the time of the divorce. This mortgage was to be first payable upon the earlier of the following occurrences: (1) sale of the marital home, (2) Defendant's remarriage, (3) the Defendant no longer resides in the marital home, or (4) at the time the youngest child attains the age of eighteen, or graduates from high school, whichever is later.

The Judgment of Divorce also provided that the Defendant would assume all debts associated with the home such as the mortgage, taxes and insurance, but not any debts

associated with the Plaintiff's failed business. Plaintiff's failed business debts arise from a business in which Plaintiff was the owner and proprietor. The Judgment of Divorce provides as follows regarding these debts:

*Business Debts*

IT IS FURTHER ORDERED AND [ADJUDGED], that Plaintiff shall be responsible for any and all debts incurred by Kenwood Industries Inc., d/b/a Sanco Products and any other businesses in which the Plaintiff has any interest and Plaintiff shall indemnify and hold harmless the Defendant from any such indebtedness. Said debts include but are not limited to, any and all indebtedness owed to Mr. Vaugn Stacy, any and all indebtedness owed to Internal Revenue Service, the debt to MidA[m] loan # 6003730, the debt to MidAm master card number 5424–5001–4441–4428 and the debt to Manufacturers Hanover, or any other credit card debts.

In a previous Order of the State Court, the Plaintiff was obligated to pay One Hundred and Thirty-four Dollars ($134.00) per week to the Defendant to help with household expenses. The Judgment of Divorce terminates Plaintiff's payment for household expenses, but because Plaintiff was not current with these payments, it also provides for the payment of the arrearage. This portion, also found in the property settlement section of the Judgment of Divorce, provides as follows:

*Household Expenses*

IT IS FURTHER ORDERED AND ADJUDGED, that Plaintiff's [also the Plaintiff in this case] obligation to pay household expenses in the amount of One Hundred Thirty-four and No/00 ($134.00) Dollars per week to the Defendant pursuant to the Interim Order dated October 23, 1991, shall terminate on May 14, 1993. Household expense arrearages are $6000 Six Thousand Dollars. Plaintiff shall make payments of $75 Dollars per week on said arrearage commencing July 30, 1993. Interest shall accrue on the unpaid balance of arrearage at the rate of 7 per cent per annum commencing January 1, 1994[,] to be paid to Diana Sanders.

Further the question of the amount Mr. Sanders should pay on household expense arrearage is referred to the friend of the court for recommendation.

The Defendant in the herein case delineates three debts which the Defendant argues should be determined non-dischargeable: (1) the note payable to Chiltons, Inc. totaling Fifteen Thousand Dollars ($15,000.00), (2) the Mid–Am bank loan and credit cards debts totaling Ten Thousand Six Hundred Eighteen and $^{24}/_{100}$ Dollars ($10,618.24), and (3) the household expense arrearage presently totaling Five Thousand Two Hundred Dollars ($5,200.00). The Defendant claims that these debts were assumed by Plaintiff so that she could afford to remain in the marital home for the sake of the children. Plaintiff argues that the Judgment of Divorce expressly states that alimony shall not be awarded to either party, and that the Plaintiff's income was (and is) less than that of the Defendant. Thus, the Plaintiff argues, the hold harmless debts could not be support but rather were a property settlement.

The parties have stipulated to the admission of the Decision of the State Court, delivered from the bench by State Court Judge after a two day trial on the divorce of the parties. The Judgment of Divorce was to be a memorialization of the Court's Decision. The following are excerpts from the Court's Decision:

The husband can earn approximately $25,000.00 per year. I note that he never earned in excess from what I find to fact and the testimony, in excess of $30,000.00 per year but always less than that, even when the business was running well.

\*       \*       \*       \*       \*       \*

I find that Mrs. Sanders' income is $38,444.00 . . .

\*       \*       \*       \*       \*       \*

Further I find as fact . . . that Mr. Sanders has no college degree but has had approximately 3 years, according to the testimony . . . of engineering studies. I do note that from her testimony that Mrs. Sanders has a college degree, is a teacher and has a master's degree.

\*       \*       \*       \*       \*       \*

... [Mr. Sanders] created the business, business debts happened while he was there and while the person that he employed, Ms. Rasmussen, was there.

\*  \*  \*  \*  \*  \*

I do determine that any outstanding business debts are [Mr. Sanders] and he is to hold her harmless for them.

\*  \*  \*  \*  \*  \*

The house of the parties is a major asset. I realize that there has been an IRS lien placed against it and the IRS is I believe as I understand the testimony, attributing that to his share, that is Mr. Sanders and not Mrs. Sanders' share. He ought to pay the lien and he ought to hold her harmless if that affects her share in the house as I'm going to deal with it.

\*  \*  \*  \*  \*  \*

THE COURT: ... In relation to [the household expense payments] and I note again, I've said it on the record, that, and I find as fact, that there was a benefit to her but the primary benefit was to the children. They had their mother there to help them in a house they knew. This court recognizes that there is sometimes trauma and even in the friendliest divorce, I don't say this was an extremely bitter one, but it was not settled. Parties are here as they have a right to be and I think this is important to them.

\*  \*  \*  \*  \*  \*

There is no alimony ordered. I have considered all of the things in the case law that relate to alimony, length of marriage, station of the parties, earning, health, other matters. Considering all these things, I am not able to find that either of these parties has been substantially at fault in this breakdown of the marriage. No alimony is awarded to either party.

\*  \*  \*  \*  \*  \*

[DEFENDANT'S ATTORNEY]: With regard to the court's ruling on the marital home, there are outstanding real estate taxes on ...

THE COURT: I have ordered because I have Mr. Sanders assume all debt, I found there wasn't anything there for the business, any outstanding business debts he is to hold her harmless. I assume there won't be another bankruptcy file [other that the bankruptcy of the business]. I have taken into consideration here and if there would be one, we might have to come back and do this settlement because I'm taking in mind that he is going to hold her harmless from any debt including the $35,000 lien on the house. I don't know that there is anymore but what it is is his and in part of that consideration and the fact that I'm making him pay $134 up through Friday, she is to pay all those taxes and obligations and obviously that benefits both of them but it has benefitted to the she's lived in so that I've specifically dealt with or meant to.

\*  \*  \*  \*  \*  \*

[DEFENDANT'S ATTORNEY]: With regard to the set-off provisions, would she be entitled to set off against money owed him if she is brought into collection on any of these business debts, and monies ...

THE COURT: I'm not going to rule specifically on that but he is to hold her harmless and if she incurs obligations, it might be something we would deal with here. I would simply hope it wouldn't happen, but that may depend on the reasonableness of creditors and other matters also.

\*  \*  \*  \*  \*  \*

[PLAINTIFF'S ATTORNEY]: Two other questions, one regarding debts. You said that Mr. Sanders was to assume all business debts. Did we differentiate between personal debts and business debts or did the court ...

THE COURT: I have not. I assume that the credit cards unless somebody shows me otherwise, deal with the business. The home obligations I have said are hers, taxes, that sort of thing.

At trial, Defendant testified that she could not at the time of the divorce, or now, pay the Plaintiff's business debts and maintain the home for her children. The Plaintiff testified that Defendant could not have maintained the home "without concessions."

Plaintiff points to some of Defendant's luxury items that Plaintiff has kept through the divorce as evidence of Defendant's ability to maintain the household. Primarily, Plaintiff points to a baby grand piano and a Florida condominium. In the Decision of the Court, the Court mentions that Defendant should be awarded the piano because she either brought it with her to the marriage, or it was a replacement of such. There was little equity in the condominium, Two Thousand Dollars ($2,000) for each party. The condominium was divided equally between the parties in the Court's decision, but Defendant was allowed to offset for unpaid household expense payments against the Plaintiff's share. Defendant now owns all the equity in the condominium.

## LAW

Section 523 of the Bankruptcy Code reads in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

## DISCUSSION

Determinations concerning the dischargeability of debts are core proceedings pursuant to 28 U.S.C. Section 157. Thus, this case is a core proceeding. The party seeking to have the debt determined dischargeable bears the burden of proof by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Defendant argues that three areas of debts should be found non-dischargeable support obligations in this case, (1) a note payable to Chiltons, Inc. totaling Fifteen Thousand Dollars ($15,000.00), (2) the Mid–Am bank loan and credit cards debts totaling Ten Thousand Six Hundred Eighteen and ²⁴/₁₀₀ Dollars ($10,618.24), and (3) the household expense payment arrearage presently totaling Five Thousand Two Hundred Dollars ($5,200.00). As detailed above, the first two areas are joint debts from which the Plaintiff was to hold Defendant harmless under the terms of the Judgment of Divorce. The Court finds, from the testimony of the parties and the findings of the State Court as stated in its Decision and the Judgment of Divorce, that the first two areas arise from Plaintiff's failed business.

■ Under § 523(a)(5), a hold harmless obligation found in a divorce decree regarding joint marital debts, such as the one found in the case at bar, can be found to be non-dischargeable spousal support. *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). The Plaintiff in this case argues that the assumption of the business debts, as well as the household expense payment arrearages, are property settlements and are therefore dischargeable. In support of this argument Plaintiff points to the Defendant's higher income, and the luxury items she has managed to retain through the divorce. Further, Plaintiff notes that the hold harmless clause was placed in the property settlement section of the Judgment of Divorce.

■ The language of the parties' (or state court's) characterization of the loan assumption in the divorce judgment does not control the Bankruptcy Court's determination as to the support nature of the obligation. *Calhoun*, 715 F.2d at 1111. In *Calhoun*, the Court of Appeals for the Sixth Circuit outlined a four part formula for determining whether payments by a debtor are in the nature of alimony or property settlement. This formula has been summarized as follows:

(a) whether the *intent* of the state court or the parties was to create a support obligation;

(b) whether the support provision has the actual *effect* of providing necessary support;

(c) whether the amount of support provision is so excessive as to be *unreasonable* under traditional concepts of support; and

(d) if the amount of support is unreasonable, how much of it should be characterized as non-dischargeable for purposes of federal bankruptcy law.

*In re Singer*, 787 F.2d 1033 (6th Cir.1986) (Guy, J., concurring, emphasis in original). The Bankruptcy Court's determination as to whether a loan assumption constitutes a non-dischargeable support obligation is a factual finding only reviewable under the clearly erroneous standard. *Calhoun*, 715 F.2d at 1110; *Singer*, 787 F.2d at 1035.

■ This Court finds that the debt for the arrearage on the house expense payments is clearly in the nature of a support payment. In the State Court's Decision, rendered after a lengthy two day trial, the Court expressly mentions that the household payments were primarily for the benefit of the children, so that they could remain in their home through the "trauma" that separation of their parents brings through the resolution of the divorce. This Court finds that this debt meets all of *Calhoun* criteria.

■ The decision regarding the assumption of the business debts is not as easily rendered. The first prong of the *Calhoun* inquiry tests whether the intent of the State Court or the parties was to create a support obligation. *Calhoun*, 715 F.2d at 1109. In this case, because the State Court issued a Decision that was to be memorialized in the Judgment of Divorce, this Court must determine the intent of State Court in creating Plaintiff's obligation. It can be gleaned from statements made in its Decision that the State Court was not certain whether this hold harmless provision would be non-dischargeable support. The Court merely stated that it hoped that Plaintiff would do his part to hold the Defendant harmless on these debts, and that the issue would have to be visited again if he failed to do so. It is therefore up to this Court to determine whether the State Court would have considered these debts non-dischargeable support, had it reached the issue.

■ When determining whether the parties or the State Court intended to create a support obligation the Bankruptcy Court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support. *Calhoun*, 715 F.2d at 1109. This Court has long considered such factors as the disparity of earning power, need for economic support and stability, presence of minor children, and marital fault in making this determination. *In re Conrad*, 33 B.R. 601 (Bankr.N.D.Ohio 1983); *In re Hiller*, 44 B.R. 764, 767 (Bankr.N.D.Ohio 1984). Indeed, such factors were delineated by the Court of Appeals in *Singer*, 787 F.2d at 1035, citing *In re Shaver*, 736 F.2d 1314 (9th Cir.1984).

■ Usually, the *Calhoun* inquiry is made by considering each debt which was to be assumed in the divorce entry individually. *Calhoun* at 1111. Such an approach is especially helpful when the contested obligations are secured by specific items of property, or were incurred for specifically delineated services or items of property. See *In re Shimp*, 59 B.R. 553 (Bankr.N.D.Ohio 1986), where this Court determined that repairs to the non-debtor spouse's residence and personal expenses for the benefit of the family were non-dischargeable, whereas debts for furniture currently used by the debtor were dischargeable. *Id.* at 555.

However, sometimes it is necessary to determine whether in the scheme of obligations imposed by the decree, payment of those debts effectively operates as maintenance and support. *In re Hiller*, 44 B.R. 764, 767 (Bankr.N.D.Ohio 1984). See also *In re Troup*, 730 F.2d 464 (6th Cir.1984) (Sixth Circuit upheld Bankruptcy Court's determination that Debtor's assumption of marital debts was intended to be a necessary and inseparable part of maintenance and support of the spouse and her two children); *In re Brasher*, 20 B.R. 408 (Bankr.W.D.Tenn.1982) (Debtor induced the non-debtor spouse into accepting debtor's assumption of joint debts

in lieu of alimony, and thus all joint debts were non-dischargeable); *In re Williams,* 703 F.2d 1055 (8th Cir.1983) (Debtor's obligation to pay marital debts was nondischargeable support where evidence indicated that intent was to help spouse meet monthly living expenses); *In re Pitzen,* 73 B.R. 10 (Bankr.N.D.Ohio 1986) (Debtor's assumption of joint debt to insurance company was intended to enable spouse to support of herself and minor children, including mortgage payments on the house); *In re West,* 95 B.R. 395 (Bankr.E.D.Va.1989) (The Court looked to actual intent of divorce decree without consideration of the nature of the underlying debts); *In re Holdenried,* 178 B.R. 782, 785 (Bankr.E.D.Mo.1995) (The Court applied a totality of the circumstances test to determine whether a debtor's assumption of the spouse's attorney's fees was in the nature of support). This approach appears the most equitable in the case at bar.

In the case at bar, the Court finds that the hold harmless provision of the Judgment of Divorce was intended to provide non-dischargeable support for the parties' children. While this Court recognizes that this is a difficult decision in this case, the Court can find eight factors which favor this conclusion. First, though the parties were to evenly divide the equity in the house, the house was awarded to Defendant until, in pertinent part, the children either attained the age of eighteen, or graduated high school, whichever is the later. This is the clearest evidence of the intention of the State Court and the parties to provide the children the opportunity to grow up in the home and surroundings in which they were accustomed. The equal division of the equity of the home was clearly a property settlement, but the intent was for that settlement to be delayed for the benefit of children. Because the State Court found that the debts were clearly the Plaintiff's, and that Plaintiff should hold Defendant harmless on those debts to the extent they affect her possession of the house, this points toward the conclusion that the hold harmless obligation was intended to provide support.

■ Second, the State Court assumed that there would not be another bankruptcy filed (besides the one Plaintiff filed for his business). As stated above, when a scheme of obligations imposed by the decree takes into account the payment of joint debts when considering the amount and nature of support, payment of those debts effectively operates as maintenance and support. This Court believes that the statement by the Court that if another bankruptcy was filed, they would have to come back and do the settlement again, implies that the scheme, including the support obligation and the necessity of the children remaining in their home, was predicated upon the Plaintiff's duty to hold Defendant harmless on the business debts. Thus, the payment of the debts constitutes support.

Third, the Defendant testified, and the Plaintiff agreed, that it was very important to Defendant that she be able to keep the house and raise the children there. The Court is satisfied that Defendant's concern was primarily for her children. Thus, the State Court's capitulation to this concern by composing a scheme whereby Defendant retains the home until the children turn eighteen, evidences an intent to provide a home for the children.

Fourth, the State Court's concern that the children remain in the home in which they are accustomed is further evidenced by the Court's award of a payment of household expenses during the pendency of the divorce. Though the Court mentioned that it felt it was particularly important that the children remain in the home until the resolution of the divorce, it is nevertheless an expression of the importance of the home to the children as a means of providing stability. The need for stability does not go away after the divorce. Further, the Court noted that the household expense payment would continue until the adjusted support payment figure began, showing an intent that it be continued post-divorce.

Fifth, the necessity of awarding the household expense payment shows the Defendant was not able to provide for the household by herself. Thus, there was little chance she could afford the payment of the business debts as well, and therefore the Plaintiff's assumption of these debts operates to pro-

vide for the children's household. This points toward a finding of support.

Sixth, because the business debts were Plaintiff's, equity leans toward not having the children bear the burden of the failed business attempt. Though it can be argued that children often do bear such a burden, equity would prefer this not be the case if possible. This Court believes such a consideration influenced the State Court's decision.

Seventh, the Defendant was ordered to pay, and hold Plaintiff harmless on, all household related debts, including taxes, mortgage, and insurance. Plaintiff's assumption of the business debts made it possible for Defendant to pay these household debts. If Plaintiff had been ordered to pay the household debts, there would be little doubt as to the support nature of the hold harmless obligations. Because the Plaintiff's obligation is so closely tied to the payment of household obligations, it supports the conclusion that the assumption of the business debts was intended to operate as household support.

Eighth, this Court believes that, other things being equal, children should be entitled to maintain the same standard of living after a divorce as they were accustomed to before the divorce. This Court believes that had the parties remained married, with both of their incomes, they would have managed to keep their house in spite of Plaintiff's failed business attempt. Plaintiff is earning approximately the same amount now as he was while the parties were married and acquired the home. Thus, the precipitative factor for the alleged inability of Plaintiff to provide for the home would appear to be the divorce. This Court does not believe that the children's standard of living, indeed their home, should be sacrificed for the sake of the divorce. Further, this Court believes that a similar belief was evidenced by the State Court when it awarded the use of the home to the Defendant and the children, and when the State Court determined that Plaintiff shall hold her harmless on debts which could affect her possession of the home.

At Trial, Plaintiff pointed to some luxury items that Defendant has managed to maintain through the divorce as evidence of the settlement nature of the hold harmless obli-

gation. Most notably, the Plaintiff pointed to the Defendant's baby grand piano and a Florida condominium. The Plaintiff's arguments concerning these luxury items would appear to go to the second and third prongs of the *Calhoun* analysis rather than the first. To the extent that Plaintiff's argument is intended to speak to the first prong of the test, the Court finds it unpersuasive. The State Court, in its decision, did not award the Defendant the piano or the condominium for reasons that would affect the determination as to its intent concerning the hold harmless provision. The piano was awarded to her because the Court found it was hers. The equity in the condominium was divided equally between the parties. She was only entitled to set off against Plaintiff's equity if Plaintiff did not pay the Court ordered household expense payment, which this Court has already determined to be support. Thus, the Court finds that the intent of the hold harmless obligation was the support of the minor children.

The second prong of the *Calhoun* inquiry tests whether the hold harmless obligation which was intended to provide support actually had the effect of provided support. In this case, for many of the same reasons discussed in detail above, the Court is confident that it did. The Court will not duplicate these reasons here.

█ The third prong of the *Calhoun* inquiry tests whether the amount of support provision is so excessive as to be unreasonable under traditional concepts of support. It is under this prong that the Court finds Plaintiff's arguments concerning the luxury items, namely the baby grand piano and the Florida condominium, most persuasive. That is, to the extent that Defendant was able to maintain these luxury items, the hold harmless obligation of the Judgment of Divorce could have operated to provide support in an amount that was unreasonable under traditional concepts of support.

█ Initially, the Court is aware that even if the State Court had ordered her to sell these things, the monies so derived would not have provided lasting support for her or her children. Further, the Court

cannot fault the Defendant for wanting to retain a cherished possession such as a piano through a troubled time in her life. Finally, this Court does not believe that a spouse of a debtor must sell off all possessions of value in order to be eligible under bankruptcy law to retain the benefit of a hold harmless obligation intended to provide support.

■ The Court is not as understanding regarding the condominium in Florida, though the Court realizes that at the time of the divorce the equity in the property could not have brought any lasting relief. As noted by the State Court, the equity in the property was relatively small, and the transaction costs of selling the condominium could have been prohibitive. However, the Court finds it unwise and unnecessary to retain such property if additional payments are required. Defendant testified that she pays One Hundred Sixty-two Dollars ($162.00) per week for the Condominium, as well Six Hundred Twenty-five Dollars ($625.00) per year in membership fees. Thus, Defendant's monthly expenses were increased by approximately Two Hundred Fourteen Dollars ($214.00) because she retained the property. Though Defendant testified, and this Court believes, that she was on a very tight budget to afford the costs of the home and her share of raising the children, this Court finds that to the extent she was able to afford to maintain the Florida condominium, the amount of support provided by the hold harmless obligation was unreasonable under traditional concepts of support. This is especially true considering Plaintiff's relative income both now and at the time of the divorce.

■ If the obligation is found to be excessive, the fourth prong of the *Calhoun* inquiry tests the extent to which the support is excessive, and directs the Bankruptcy Court to reduce the non-dischargeable support obligation by the amount it is so excessive. In this case, this puts the Court in the difficult position of reducing the monthly amount Defendant has been paying to maintain the condominium to a lump sum figure. For lack of a more appropriate method of accomplishing this goal, the Court will consider the present value of a five year monthly annuity of Two Hundred and Fourteen Dollars ($214.00) at the judgment rate of ten percent (10%). The Court feels that five years is a reasonable term of repayment and would not think it equitable that Defendant should have to pay debts primarily incurred by Plaintiff for his business for a period any longer than five years. A lump sum that reflects a payment longer than this period would appear to this Court to be excessive, and the excess would render Plaintiff's hold harmless obligation not unreasonable support to the extent of the excess, as this Court has determined under the third prong of *Calhoun* as discussed above. According to the Court's calculations, the lump sum dischargeable amount would be Ten Thousand Seventy-two Dollars ($10,072.00).

■ Having determined that all the contested debts shall be non-dischargeable except to the extent of Ten Thousand Seventy-two Dollars ($10,072.00), the final question remains as to which of the contested debts the Court should deem dischargeable. This Court, for lack of a more equitable alternative, shall order that the debts to Mid–Am, including the credit card debts, which total approximately Ten Thousand Six Hundred and Eighteen Dollars ($10,618.00), shall be discharged to the extent of Ten Thousand Seventy-two Dollars ($10,072.00). This Court finds two reasons for its equitable finding of the allocation of the discharge of the bulk of these debts to Mid–Am. First, the dischargeable amount found by this Court is roughly equal to the total of the debt to Mid–Am. Second, at the trial, the Defendant stated that she had already been forced to make payments on this debt, and may have come to an arrangement with Mid–Am on this issue.

For all the foregoing reasons, the Court finds that the contested debts shall be determined dischargeable to the extent detailed in this Opinion. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

It should also be noted that at the Trial, the Court permitted the parties to file Post-trial Briefs if they wished. The Plaintiff has

since filed a Motion to Strike portions of the Defendant's Brief. Because the Court has not relied upon any objectionable information found in the Defendant's Brief, the Court finds that the issue is moot, will deny the Plaintiff's Motion.

Accordingly, it is

**ORDERED** that the debts owing to Mid–Am be, and are hereby, *DISCHARGEABLE* in the amount of Ten Thousand Seventy-two Dollars ($10,072.00).

It is **FURTHER ORDERED** that all the joint debts of the Parties owing to Chiltons, Inc., totaling approximately Fifteen Thousand Dollars ($15,000.00) be, and are hereby, *NON–DISCHARGEABLE*.

It is **FURTHER ORDERED** that Plaintiff's debt to Defendant, totaling approximately Five Thousand Two Hundred Dollars ($5,200.00) be, and is hereby, *NON–DISCHARGEABLE*.

It is **FURTHER ORDERED** that the Plaintiff's Motion to Dismiss be, and is hereby, *DENIED*.